(Nos. 70029, 70030, 70032, 70033, 70036 cons)

UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant, v. WILKIN INSULATION COMPANY *et al.*, Appellees (Commercial Union Insurance Company *et al.*, Intervenors-Appellants).

*Opinion filed May 20, 1991.—Rehearing denied September 30, 1991.*

CALVO, J., took no part.

Kiesler & Berman, of Chicago (Robert L. Kiesler, Cynthia A. Meister, Edith Reese-Gordon and Patti M. Deuel, of counsel), for appellant United States Fidelity and Guaranty Co.

Stephen C. Neal, Marion B. Adler and Paul A. Hybel, of Kirkland & Ellis, of Chicago, and Craig S. Mielke, of Murphy, Hupp, Foote, Mielke & Kinnally, of Aurora, for appellees Wilkin Insulation Co. *et al.*

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, Anthony P. Katauskas and Lloyd E. Williams, Jr., of counsel), for intervenors-appellants Commercial Union Insurance Co. and Employers' Fire Insurance Co.

Matthew J. Gehringer, Robert J. Bates, Jr., and Sandra D. Oliszewicz, of Pope & John, Ltd., of Chicago, for intervenor-appellant Zurich Insurance Co.

Hinshaw & Culbertson, of Chicago (D. Kendall Griffith, Thomas M. Hamilton, Fritz K. Huszagh and Katherine S. Dedrick, of counsel), for intervenors-appellants Argonaut Insurance Co. and Argonaut Midwest Insurance Co.

Rivkin, Radler, Bayh, Hart & Kremer, of Chicago (Steven R. Merican and Michelle J. Gilbert, of counsel), for intervenor-appellant Aetna Casualty & Surety Co.

Wilson M. Brown III, Stewart Dalzell and David F. Abernethy, of Drinker, Biddle & Reath, of Philadelphia, Pennsylvania, and Richard L. Sandler, of McDermott, Will & Emery, of Chicago, for *amici curiae* American Motorists Insurance Co. *et al.*

Thomas W. Brunner, Richard H. Gordin and Frank Winston, Jr., of Wiley, Rein & Fielding, of Washington, D.C., and Don E. Glickman, of Rudnick & Wolfe, of Chicago, for *amicus curiae* Insurance Environmental Litigation Association.

Robert J. Ruiz, Solicitor General, of Chicago, and Marilyn A. Kueper, Assistant Attorney General, of

Springfield, for *amicus curiae* Attorney General Roland W. Burris.

Jerold Oshinsky, Randy Paar and Robert L. Carter, of Anderson, Kill, Olick & Oshinsky, and William H. Allen, William F. Greaney and Adam M. Cole, of Covington & Burling, all of Washington, D.C., and Robert A. Creamer and John S. Vishneski III, of Keck, Mahin & Cate, of Chicago, for *amici curiae* W.R. Grace & Co. *et al.*

JUSTICE BILANDIC delivered the opinion of the court:

We are called upon to interpret certain provisions of comprehensive general liability insurance policies dealing with the duty of insurance companies to defend their insureds. This litigation originates as a result of underlying lawsuits instituted by school districts and public building owners against a multitude of defendants that collectively make up the "asbestos industry." The defendant herein, Wilkin Insulation Company (Wilkin), is alleged to be a part, although relatively insignificant, of the "asbestos industry." The underlying lawsuits seek reimbursement of costs incurred in asbestos abatement procedures from Wilkin and its codefendants. The events giving rise to the underlying litigation coincide with the periods of coverage of one or more of the comprehensive general liability insurance policies issued by plaintiff insurance companies to Wilkin.

Wilkin promptly notified its insurers of these asbestos-related cases and asked plaintiffs to defend it and to pay the resulting damages, if any, within the policy limits. Plaintiff United States Fidelity & Guaranty Company (USF&G) refused to defend Wilkin and denied all coverage. The other plaintiffs, Commercial Union Insurance Company and Employers Fire Insurance Company (collectively, Commercial Union), Argonaut Insurance Company

and Argonaut Midwest Insurance Company (collectively, Argonaut), Aetna Casualty & Surety Company (Aetna) and Zurich Insurance Company (Zurich), undertook Wilkin's defense under a reservation of rights.

USF&G instituted the instant declaratory judgment action, in the circuit court of Cook County, against Wilkin Insulation Company, Wilkin Properties, Inc., and Architectural Sales, Inc., the named insureds under its comprehensive general liability policy (collectively, Wilkin). USF&G sought a determination that it had no duty to defend or indemnify Wilkin in the underlying lawsuits. Thereafter, Commercial Union, Argonaut, Aetna and Zurich intervened in this action as party plaintiffs, seeking the same declarations with regard to their duties to defend and indemnify Wilkin.

During consecutive policy terms between 1964 and 1985, Wilkin was insured under comprehensive general liability insurance policies issued at varying times by plaintiffs. Under the terms of these policies, each plaintiff agreed to defend and provide coverage for Wilkin in any action seeking damages on account of "property damage" caused by an "occurrence."

Wilkin is a small, family-run operation, whose business is the installation of insulation products in buildings under construction. From 1958 to 1970, a small percentage of Wilkin's business was the contract installation of spray-on fireproofing products which contained asbestos. Wilkin would act as a sub-contractor, applying the fireproofing products in accordance with the specifications and requirements of the general contractors, architects and engineers of various construction projects located in Indiana and Illinois.

Until roughly the mid-1970s, the use of asbestos-containing material for fireproofing and soundproofing was an accepted, and often required, specification in building construction. In the last decade, however, the well-recog-

nized utility of these products has been overshadowed by the potential health hazard to human beings exposed to asbestos fibers. Concern over the effects of exposure to asbestos fibers has resulted in a maze of Federal and State regulations requiring local educational facilities and other public building owners to identify the presence of asbestos in their buildings and take corrective measures to contain or remove the asbestos products from their buildings. See, *e.g.*, 20 U.S.C. §3601 *et seq.* (1988); 40 C.F.R. §763 (1990); Ill. Rev. Stat. 1985, ch. 122, par. 1401 *et seq.*

These regulations have resulted in mass litigation brought by these building owners against the whole "asbestos industry" to recover the costs associated with the inspection, removal from and/or replacement of asbestos in their buildings. Wilkin has found itself a named defendant in this asbestos-related litigation brought against an enormous defendant class, made up of the entire chain of miners, manufacturers, distributors, sellers, architects, engineers, contractors and installers of asbestos-containing products. The instant action involves nine of these asbestos-related lawsuits, brought by various building owners against over 60 named defendants, including Wilkin.

In the case at bar, plaintiffs moved for summary judgment on the issues of their duty to defend and indemnify Wilkin in the underlying lawsuits. Wilkin responded with its cross-motion for summary judgment against plaintiffs, contending that each plaintiff had a duty to defend and indemnify Wilkin under the terms of their respective comprehensive general liability policies. (Aetna made no motion for summary judgment but agreed to be bound by the trial court's determination.) The trial court granted plaintiffs' motions for summary judgment and denied Wilkin's summary judgment motion, finding that plaintiffs had no duty to defend Wilkin in the underlying lawsuits. Because no determination of Wilkin's liability in the

underlying lawsuits had yet been made, the trial court found that any determination as to plaintiffs' obligation to indemnify Wilkin was premature. *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150.

In granting plaintiffs' motions for summary judgment, the trial court determined that the underlying complaints did not allege "property damage" caused by an "occurrence" under the terms of the various insurance policies. The trial court further found that various exclusionary clauses of the insurance policies precluded coverage and the duty to defend.

Wilkin appealed the trial court's order granting summary judgment in favor of plaintiffs. The appellate court reversed, finding that the underlying complaints sufficiently alleged "property damage" caused by an "occurrence" to bring the cases within coverage by plaintiffs' insurance policies. The appellate court further found that the exclusionary clauses contained in plaintiffs' insurance policies were inapplicable. The appellate court, therefore, held that plaintiffs had a duty to defend Wilkin in the underlying lawsuits. The appellate court made no determination on the duty to indemnify. (193 Ill. App. 3d 1087.) We granted plaintiffs' petitions for leave to appeal (134 Ill. 2d R. 315) and consolidated these actions for review. *Amicus curiae* briefs were filed in support of plaintiffs' position by the Insurance Environmental Litigation Association, American Motorists Insurance Company, American Manufacturers Mutual Insurance Company and Lumbermans Mutual Casualty Company. An *amicus curiae* brief was filed by the Attorney General of Illinois in support of Wilkin's position. An *amici curiae* brief was filed by W.R. Grace and Company, Armstrong World Industries, Inc., Borg-Warner Corporation, and Owens-Corning Fiberglass Corporation, also in support of Wilkin.

At the time of this appeal, no determination of Wilkin's liability in the underlying lawsuits has been made. Therefore, any determination of plaintiffs' duty to indemnify Wilkin with respect to the underlying lawsuits is premature. (*Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150.) The issue presented is whether the appellate court correctly determined that plaintiffs have a duty to defend Wilkin in the underlying lawsuits under the terms of their comprehensive general liability policies. We affirm.

## I.

### DUTY TO DEFEND STANDARD

Each plaintiff agreed to "defend any suit against [Wilkin] seeking damages on account of *** property damage, even if any of the allegations of the suit are groundless, false or fraudulent." To determine an insurer's duty to defend its insured, the court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. (*Thornton v. Paul* (1978), 74 Ill. 2d 132.) An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388.) Moreover, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy. *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187.

The underlying complaints and the insurance policies must be liberally construed in favor of the insured. Where a policy provision is clear and unambiguous, its language must be taken in its "plain, ordinary and popular sense." (*Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 121.) A provision is ambiguous if it is subject to more than one reasonable interpretation. (*Marathon Plastics, Inc. v. International Insurance Co.* (1987), 161 Ill. App. 3d 452, 464.) All doubts and ambiguities must be resolved in favor of the insured. *Northbrook Property & Casualty Insurance Co. v. United States Fidelity & Guaranty Co.* (1986), 150 Ill. App. 3d 479; *Trovillion v. United States Fidelity & Guaranty Co.* (1985), 130 Ill. App. 3d 694.

With these principles in mind, we will now review the allegations of the underlying complaints and plaintiffs' insurance policies. We must determine whether the underlying complaints allege potentially covered "property damage" caused by an "occurrence" that is not excluded by the various exclusionary clauses contained in the insurance policies.

## II.

## PROPERTY DAMAGE

We have reviewed each of the nine underlying complaints pursuant to the liberal duty to defend standard set forth above. Each complaint alleges that asbestos-containing products were installed in the buildings. The complaints further allege that, upon deterioration of the asbestos-containing product itself or upon disturbance from an outside force, asbestos fibers are released into the air. These fibers are extremely durable and lasting. The asbestos fibers are of the size and shape that permit them to remain airborne for periods of time, settle, and then become resuspended in the air to later settle at different

locations throughout the buildings. Thus, the buildings and their contents (*e.g.*, carpets, upholstery, drapery, etc.) are virtually contaminated or impregnated with asbestos fibers, the presence of which poses a serious health hazard to the human occupants. Finally, under various theories of recovery, the underlying complaints seek damages in the form of the costs of inspecting their buildings and the contents therein for the presence of asbestos fibers. The complaints further seek to recover from all defendants, including Wilkin, any costs associated with the containment, removal and/or replacement of the asbestos-containing products.

Turning to the definitions of property damage contained in plaintiffs' insurance policies, we note that these definitions vary somewhat. However, for purposes of our review, we will use the strictest definition of property damage. The post-1973 standard form policy, issued by Aetna, Zurich and USF&G, defines property damage as:

> "1) physical injury to or destruction of tangible property, which occurs during the policy period, including the loss of use thereof at any time resulting therefrom."

All plaintiffs essentially argue that the underlying complaints do not allege *physical* injury to *tangible* property. Rather, plaintiffs contend that the presence of health-threatening, asbestos-containing products results only in intangible economic loss in the form of diminished market values of the buildings.

This court, however, has already found that asbestos fiber contamination constitutes physical injury to tangible property, *i.e.*, the buildings and their contents. (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428.) In *Board of Education*, we rejected the same argument that the instant plaintiffs now make. There this court found:

> "[I]t would be incongruous to argue there is no damage to other property when a harmful element exists throughout a building or an area of a building which by law must

be corrected ***. The view that asbestos fibers may contaminate a building sufficiently to allege damage to property has been recently adopted in a number of cases. ***

* * *

*** The essence of the allegations [of the complaints] is that the buildings have been contaminated by asbestos to the point where corrective action, under the law, must be taken. Thus, the buildings have been damaged." (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 446-49 (citing *City of Greenville v. W.R. Grace & Co.* (4th Cir. 1987), 827 F.2d 975; *City of Manchester v. National Gypsum Co.* (D.R.I. 1986), 637 F. Supp. 646; *Town of Hooksett School District v. W.R. Grace & Co.* (D.N.H. 1984), 617 F. Supp. 126; *Shooshanian v. Wagner* (Alaska 1983), 672 P.2d 455).)

In the instant action, the underlying complaints allege that the buildings and the contents therein were contaminated by toxic asbestos fibers. Therefore, the underlying complaints allege physical injury to tangible property. Thus, we find that the underlying complaints allege potentially covered property damage.

## III.

## OCCURRENCE

To determine whether the insurers have a duty to defend Wilkin in the underlying lawsuits, we must further determine whether the contamination of the buildings resulted from an "occurrence." Generally, the policies define occurrence as:

"an accident, including continuous or repeated exposure to conditions which result in property damage *** neither expected nor intended from the standpoint of the insured."

Plaintiffs argue that there is no "occurrence" because (1) there is no event or accident which results in property damage and (2) the property damage was either expected or intended by Wilkin.

First, plaintiffs argue that the only event which precedes the alleged property damage is Wilkin's intentional act of installing the asbestos-containing products in the buildings. Therefore, plaintiffs reason that the property damage was not the result of any preceding "accident."

The insurance policies' definition of "accident," however, includes the "continuous or repeated exposure to conditions." In the instant action, the underlying complaints all allege that the asbestos-containing products continuously release toxic asbestos fibers into the air. This continuous release of asbestos fibers constitutes a harmful condition. By virtue of the "continuous or repeated exposure to the condition" of asbestos fiber release, the buildings and their contents became contaminated. It is the continuous exposure of the buildings and their contents to released asbestos fibers which constitutes the "accident," as defined by the insurance policies. This "accident" results in "property damage." Therefore, the "property damage" alleged in the underlying complaints is caused by an "occurrence," as defined within the insurance policies.

Next, plaintiffs contend that Wilkin either expected or intended the threat to human health posed by the asbestos-containing product. Plaintiffs point to several theories of recovery within the underlying complaints which allege intentional torts. Plaintiffs argue that the underlying complaints allege that Wilkin intentionally installed asbestos-containing products in the buildings with knowledge of the products' threat to human health. Therefore, plaintiffs conclude that the resulting health threat "was expected or intended from the standpoint of Wilkin."

Plaintiffs misread the definition of "occurrence" contained in the policies. Under this definition, it is the "property damage" which must be "neither expected nor intended from the standpoint of the insured." Therefore, it is the contamination of the buildings and their contents

that must be neither expected nor intended by Wilkin. We have reviewed the underlying complaints and are unable to find any allegations that Wilkin "expected or intended" to contaminate the buildings and the contents therein with toxic asbestos fibers.

Moreover, as stated above, an insurer has a duty to defend its insured if *any* theory of recovery alleges potential coverage. Each underlying complaint alleges, *inter alia*, a theory of recovery sounding in negligence. These negligence counts allege that Wilkin *knew or should have known* of the propensity of the product to release toxic asbestos fibers. Since we are required to liberally construe the pleadings and the insurance policies in favor of the insured, we conclude that the underlying complaints do not allege that Wilkin *expected or intended* to contaminate the buildings and the contents therein with toxic asbestos fibers.

Therefore, we conclude that the underlying complaints allege potential coverage for "property damage" caused by an "occurrence."

## IV.

## EXCLUSIONARY CLAUSES

Plaintiffs contend that any potential coverage alleged in the underlying complaints is precluded by various exclusionary clauses contained in their insurance policies. We note that our determination concerning the applicability of these exclusionary clauses is governed by the same liberal duty to defend standard enunciated above.

### A.

### Pollution Exclusion

Plaintiffs argue that their respective policies' pollution exclusions preclude coverage. Each of the policies at issue

contain the same pollution exclusion clause which provides:

"It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such dispersal, discharge, release or escape is sudden and accidental."

The pollution exclusion clause contains two parts—the exclusion itself and the "sudden and accidental exception" to the exclusion. Plaintiffs focus their argument upon the exception to the exclusion. However, we need not address plaintiffs' contentions because we find that the pollution exclusion does not apply in the first instance.

To exclude coverage pursuant to the pollution exclusion, the alleged property damage must arise out of (1) some form of discharge or release (2) of a contaminant or pollutant and (3) into or upon land, the atmosphere or any water course or body of water. The underlying complaints allege a "release" of a "contaminant or pollutant," thereby satisfying the first two elements of this exclusion. However, we find that the allegations do not satisfy the third requirement of this exclusion.

The ordinary, popular meaning of the phrase "the atmosphere" connotes the external atmosphere which surrounds the earth and consists of the air and any gases or particles therein. The underlying complaints allege property damage that arose from the release of a contaminant or pollutant within the buildings. We do not understand "the atmosphere" to mean the multiple, diverse internal environs or surroundings of individual buildings.

Our interpretation is especially true when the phrase "the atmosphere" is read in conjunction with the other words contained in the third element of the exclusion.

When the clause "into or upon land, the atmosphere or any water course or body of water" is read as a whole, as it must be, it is readily apparent that the pollution exclusion applies to property damage arising from the discharge of pollution into the external environment or onto some part thereof, rather than the release of asbestos fibers within a building.

Alternatively, we find that the term "atmosphere" is subject to two reasonable interpretations and is, therefore, ambiguous. Consequently, we are required to construe the exclusionary clause strictly against the insurer-drafter and in favor of potential coverage for Wilkin. Therefore, we hold that the policies' pollution exclusions do not preclude the potential coverage alleged in the underlying complaints.

## B.

### Sistership Exclusion

Plaintiffs further contend that the "sistership" exclusions contained within their respective policies operate to preclude any potential policy coverage. The "sistership" exclusion excludes coverage for:

> "Damages claimed for the withdrawal, inspection, repair, replacement or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein."

Plaintiffs argue that the allegations of the underlying complaints fall squarely within this policy exclusion. In particular, plaintiffs contend that the underlying complaints seek to recover damages for the inspection of the buildings, removal of the asbestos-containing products and replacement of this product because of a known defect, *i.e.*, the asbestos-related health hazard.

The "sistership" exclusion excludes coverage "in cases where, because of the actual failure of the insured's product, similar products are withdrawn from use to prevent the failure of these other products, which have not yet failed but are suspected of containing the same defect." (*Honeycomb Systems, Inc. v. Admiral Insurance Co.* (D.C. Cir. 1983), 567 F. Supp. 1400, 1406.) The exclusion applies only to the costs associated with the withdrawal and repair or replacement of "sister" products which have not yet failed. It does not apply, however, to the product that has already failed while in use and caused damage to the property of a third party. *Honeycomb*, 567 F. Supp. at 1407; see *Charles E. Brohawn & Brothers, Inc. v. Employers Commercial Union Insurance Co.* (Del. 1979), 409 A.2d 1055, 1057-58; *Aetna Casualty & Surety Co. v. Monsanto Co.* (Fla. App. 1986), 487 So. 2d 398, 400.

In the instant action, the underlying complaints allege that the asbestos-containing product has already failed while in use, resulting in damage to the property of the building owners. The underlying complaints seek damages for the inspection of the buildings and the removal and replacement of this product, not as the cost of a preventative action withdrawing sister products from the market, but as a measure of the property damage which has already been incurred by reason of this product. Therefore, we hold that the policies' "sistership" exclusions are inapplicable in the instant case and do not preclude potential coverage under the policy.

## C.

### Business Risk Exclusions

The comprehensive general liability policies issued by plaintiffs all contain what have commonly been referred to as "business risk exclusions." These exclusions are all

premised on the theory that liability policies are not intended to provide protection against the insured's own faulty workmanship or product, which are normal risks associated with the conduct of the insured's business. Rather, the policies are meant to afford coverage for damage to other property caused by the insured's work or product. Wilkin and plaintiff agreed to exclude these business risks from coverage.

Plaintiffs' policies exclude coverage for:

"property damage to the insured's products arising out of such products or any part of such products";
and

"property damage to work performed by or on behalf of the insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

Plaintiffs argue that these exclusions apply in the instant action, pointing to the fact that the underlying complaints seek recovery for the costs of the removal, repair and/or replacement of the asbestos-containing product. However, plaintiffs fail to recognize that the underlying complaints seek these damages as a result of the contamination visited upon the buildings and the contents therein *by* the product that Wilkin installed. As such, the underlying complaints seek recovery for damage to property other than the product installed by Wilkin or Wilkin's workmanship. Therefore, these exclusionary clauses are inapplicable to the case at bar.

## D.

### Miscellaneous Exclusions

Plaintiffs' policies also generally exclude coverage for the loss of use of tangible property resulting from the failure of the asbestos-containing insulation product to perform as warranted. Additionally, Commercial's policy

excludes coverage for "property damage resulting from" the failure of this product to perform as warranted.

Plaintiffs characterize the allegations of the underlying complaint as allegations that the product installed by Wilkin is not fit for its intended purpose because it purportedly creates a health risk. However, these exclusions apply only when the insured's product fails to perform as warranted. In the instant action, Wilkin warranted that the insulation product it installed would fireproof and insulate the buildings. The underlying complaints do not allege that this product failed to fireproof or insulate the buildings as warranted. Instead, they allege that, in serving its intended purpose, the insulation product released toxic asbestos fibers, causing property damage to the buildings and the contents therein. Therefore, we find that these exclusions do not apply in the instant action.

## V.
## CONCLUSION

We therefore conclude that the underlying complaints allege potentially covered "property damage" caused by an "occurrence" and that the various exclusionary clauses do not exculpate plaintiffs. Therefore, plaintiffs have the duty to defend Wilkin in the underlying lawsuits.

Accordingly, for the foregoing reasons, we affirm the judgment of the appellate court.

*Appellate court affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.