INSURANCE CORPORATION OF HANOVER, n/k/a Praetorian Insurance Company, Plaintiff-Appellant, v. SHELBORNE ASSOCIATES *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—07—3291

Opinion filed March 31, 2009.

Esther Joy Schwartz, Richard D. Foody, and Brian C. Bassett, all of Stellato & Schwartz, Ltd., of Chicago, for appellant.

Kevin D. Finger, Andrew J. Enschede, and Paul A. Del Aguila, all of Greenberg Traurig, LLP, of Chicago, for appellee Shelborne Associates.

Phillip A. Bock and Robert M. Hatch, both of Bock & Hatch, LLC, and Anthony DiVincenzo and Robert J. Stein III, both of DiVincenzo Schoenfield Swartzman, of Chicago, for appellee Travel 100 Group, Inc.

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff Insurance Corporation of Hanover, n/k/a Praetorian Insurance Company (ICH), filed this declaratory judgment action seeking a determination that it owed no duty to defend its insured, defendant Shelborne Associates (Shelborne), in an underlying lawsuit brought by defendant Travel 100 Group, Inc. (Travel 100), based on

its receipt of Shelborne's alleged unsolicited fax advertisement. After considering multiple motions for summary judgment, the trial court held that ICH has a duty to defend Shelborne for each count of the underlying complaint under its policy's coverage for "advertising injury" and "property damage." ICH appeals that finding.

In July 2003, Travel 100, on behalf of a class, filed its three-count complaint against Shelborne. The complaint alleged that on or around April 11, 2003, Shelborne sent an unsolicited fax advertisement that was received by Travel 100's facsimile machine. Travel 100 asserted that this fax advertisement was sent "without prior express invitation or permission" as part of a "mass broadcast of unauthorized faxes." Travel 100 sought to bring the action "on behalf of a class consisting of all persons who were sent facsimiles of material advertising the commercial availability of any property goods or services by or on behalf [of Shelbourne] and from whom [Shelborne] did not seek and obtain prior express permission or invitation for the sending of such faxes, which were sent within four years of the date of service of the summons and complaint upon [Shelborne]."

Count I alleged that Shelborne sent unsolicited facsimile communication in violation of the Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. §227 et seq. (2000)), which allows a private right of action for sending unsolicited advertisement with a facsimile machine. Count II asserted common law conversion in that by sending unsolicited faxes Shelborne shifted its advertising costs to Travel 100 and the class by converting "to its own use toner and paper belonging to [Travel 100] and the class." Count III raised a claim of common law trespass to chattels in that by sending unsolicited faxes Shelborne shifted its advertising costs to Travel 100 and the class and "intentionally dispossessed the toner, paper and fax machines belonging to [Travel 100] and the class."

ICH issued a general commercial liability policy to Shelborne for the period between August 15, 2002, and August 15, 2003. On or about July 31, 2003, Shelborne tendered its defense in the underlying lawsuit to ICH. On or about August 5, 2003, ICH informed Shelborne that there was no coverage for defense or indemnity for the underlying lawsuit due to certain provisions of the policy barring coverage from applying. On August 26, 2003, ICH filed the instant declaratory judgment action seeking a determination that it owed no duty to defend Shelborne in the Travel 100 litigation. ICH alleged that it had no duty to defend Shelborne for several reasons, including the lawsuit failed to allege the existence of an "occurrence" as that term was defined in the policy because Shelborne's conduct did not constitute an "accident" since the injuries were the natural and reasonable

consequences of that conduct; the alleged "property damage" suffered by Travel 100 was to be a reasonably expected or intended result of Shelborne's conduct; and the alleged transmission of the facsimile did not result in "personal and advertising injury" to trigger the policy's obligations.

In February 2005, following cross-motions for summary judgment, the trial court granted summary judgment in favor of Shelborne as to ICH's duty to defend counts II (conversion) and III (trespass), finding a sufficient factual basis in the underlying complaint for a potential for coverage under the policy. The trial court found that the allegations for count I did not trigger "advertising injury" coverage under the policy. In July 2005, the trial court denied ICH's motion for reconsideration and affirmed its ruling that counts II and III triggered ICH's duty to defend Shelborne.

In October 2005, Travel 100 filed an amended complaint in the underlying lawsuit. The amended complaint realleged the same three counts as the original complaint. The only change in the amended complaint was the addition of the following allegation under count I (violation of the TCPA): "[Shelborne's] unauthorized and unsolicited advertising facsimile transmission invaded [Travel 100's] and the class members' privacy and seclusion, and caused inconvenience, annoyance and bother to [Travel 100] and the members of the class."

In November 2005, Travel 100 filed a motion for reconsideration of the trial court's ruling, seeking a modification as to the coverage owed to Shelborne for count I. Travel 100 cited the Second District's decision in *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 359 Ill. App. 3d 872 (2005), which found a TCPA claim raised sufficient allegations of an "advertising injury." The Illinois Supreme Court granted the petition for leave to appeal in *Valley Forge*, and the trial court in the instant case stayed enforcement of its February 2005 ruling pending the supreme court's disposition in *Valley Forge*. In November 2006, the supreme court held in *Valley Forge* that a TCPA claim does constitute a claim for "advertising injury" because "the TCPA can fairly be described as protecting a privacy interest in seclusion." *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 366 (2006). Following the issuance of the supreme court's decision, the trial court lifted the stay.

In January 2007, the trial court granted Travel 100's motion for reconsideration and found that the underlying complaint contained allegations of "advertising injury" and triggered ICH's duty to defend as to count I. The trial court also allowed ICH to file an amended declaratory judgment complaint. The amended complaint incorporated the supreme court's decision in *Valley Forge*. In April 2007, ICH filed

a new motion for summary judgment raising two policy exclusions for coverage under count I, prior publication and the knowing violation of the rights of another. ICH asked the trial court to consider extrinsic evidence to find that Shelborne sent the fax advertisements prior to the effective date of the policy, thus barring coverage under the prior publication exclusion. In November 2007, following briefing and arguments, the trial court disagreed with ICH's arguments and denied ICH's motion for summary judgment. First, the court declined to consider extrinsic evidence because "a determination from the extrinsic evidence that the 'prior publication' exclusion applies to bar coverage *** would involve determinations of critical issues relating to contested issues of liability and damages in the underlying action." Further, the court found that the complaint, while seeking to establish a class, did not allege that the same or a substantially similar fax advertisement was sent prior to the policy's effective date to make the "prior publication" exclusion applicable. The court also refused to apply the exclusion for the knowing violation of the rights of another because the underlying complaint did not "conclusively state that Shelborne's actions (the transmissions of unauthorized and unsolicited fax advertisements) were 'willful' or 'knowing.' " The trial court also found that there was no just cause to delay the enforcement of or appeal the order under Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). This appeal followed.

On appeal, ICH argues that the trial court erred in granting summary judgment in favor of Shelborne on the duty to defend for each count of the complaint because (1) the prior publication exclusion barred coverage for count I; (2) the knowing violation of rights of another exclusion also barred coverage for count I; (3) the underlying complaint failed to allege that the property damage was caused by an "occurrence" within the meaning of the policy so as to bar coverage for counts II and III; (4) the expected or intended damages exclusion barred coverage for counts II and III; and (5) the prematurity doctrine did not prohibit the trial court from considering ICH's coverage defenses for counts II and III.

"The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of

law. 735 ILCS 5/2—1005(c) (West 2004). We review cases involving summary judgment *de novo. Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998). "As in this case, where the parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a matter of law." *Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 363 Ill. App. 3d 335, 339 (2005).

"In determining whether an insurer is obligated to defend its insured, we generally compare the allegations of the underlying complaint to the relevant provisions of the insurance policy." *Fremont Compensation Insurance Co. v. Ace-Chicago Great Dane Corp.*, 304 Ill. App. 3d 734, 738 (1999). "If the underlying complaints allege facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 98 (2000). "As the threshold for pleading a duty to defend is low, any doubt with regard to such duty is to be resolved in favor of the insured." *United Services Automobile Ass'n v. Dare*, 357 Ill. App. 3d 955, 963 (2005). "[I]nsurance policies are to be liberally construed in favor of coverage, and where an ambiguity exists in the insurance contract, it will be resolved in favor of the insured and against the insurer." *Dare*, 357 Ill. App. 3d at 963-64. Further, "if several theories of recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy." *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 155 (2005).

"The insurer's duty to defend is much broader than its duty to indemnify its insured." *Crum & Forster Managers Corp.*, 156 Ill. 2d at 393-94. The primary function of the court when construing an insurance policy is to ascertain and enforce the intentions of the parties as expressed in the agreement. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391. "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391. "It is the insurer's burden to affirmatively demonstrate the applicability of an exclusion." *Pekin Insurance Co. v. Miller*, 367 Ill. App. 3d 263, 267 (2006). "Exclusion provisions that limit or exclude coverage must be construed liberally in favor of the insured and against the insurer." *Pekin*, 367 Ill. App. 3d at 267.

We first consider ICH's arguments regarding counts II (conversion) and III (trespass). ICH asserts that the property damage coverage in the policy only covers damage caused by an "occurrence" and that the underlying complaint has not set forth allegations to constitute an "occurrence." Specifically, ICH contends that under the policy an "occurrence" is an accident and the complaint alleges intentional conduct, not an accident. Additionally, ICH argues that the policy's expected or intended damages exclusion applies to bar coverage for counts II and III and that a resolution of this issue would not determine an issue crucial to liability in the underlying lawsuit.

ICH's policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy defines "property damage" as:

"a. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

None of the parties dispute that the receipt of fax advertisements constitutes "property damage" under the policy. Further, the policy states that the insurance applies to "property damage" only if it was caused by an "occurrence." "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The "expected or intended injury" exclusion bars coverage for property damage that is "expected or intended from the standpoint of the insured."

ICH contends that Shelborne's acts were intentional, not accidental. "Courts define an accident as ' "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." ' " *Pekin*, 367 Ill. App. 3d at 265-66, quoting *Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 703 (1996). "The natural and ordinary consequences of an act do not constitute an accident." *Wil-Freds*, 277 Ill. App. 3d at 703. Here, ICH argues that the natural and ordinary consequence of sending a fax is to "tie up" the recipient's fax machine and to use its paper and toner in the receipt process. According to ICH, even if Shelborne believed that it was authorized to send the fax advertisement, the end result will be the same—the loss of use of the recipient's fax machine during transmittal and the use of the recipient's paper and toner.

However, Illinois courts have held that "[t]he focus of the inquiry in determining whether an occurrence is an accident is whether the *injury* is expected or intended by the insured, not whether the *acts* were performed intentionally." (Emphasis in original.) *Lyons v. State Farm Fire & Casualty Co.*, 349 Ill. App. 3d 404, 409 (2004), citing *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 77-78 (1991); see also *Pekin*, 367 Ill. App. 3d at 266. Additionally, the extension of coverage from "accident" to "occurrence" has generally been considered to broaden coverage. *Lyons*, 349 Ill. App. 3d at 410. Since our analysis as to whether there was an occurrence involves the question of whether the injury was expected or intended, our finding as to that question will also resolve ICH's argument that the expected or intended exclusion precludes coverage.

In *Lyons*, the underlying complaint alleged that the insured built levees that protruded onto the plaintiffs' property, and the insurer asserted that this act of building the levees was intentional and was not an "occurrence" under the policy. *Lyons*, 349 Ill. App. 3d at 408. The reviewing court concluded that nothing in the underlying complaint suggested that the insured intended or expected to have the levees protrude onto the plaintiffs' property. *Lyons*, 349 Ill. App. 3d at 410. Similarly, in *Pekin*, the underlying complaint claimed that the insured cleared trees from the wrong lots, and the insurer contended that the insured acted intentionally in cutting down trees, even if it was the wrong trees. *Pekin*, 367 Ill. App. 3d at 265-66. Relying on *Lyons*, the reviewing court rejected the insurer's argument and found that there was no evidence that the insured intended the result of removing trees from the wrong property. *Pekin*, 367 Ill. App. 3d at 266. "It is immaterial that the underlying complaint alleges intentional torts. It is the 'property damage' that must be ' " 'neither expected nor intended from the standpoint of the insured.' " ' " *Pekin*, 367 Ill. App. 3d at 266, quoting *Wilkin*, 144 Ill. 2d at 77.

We also find support in the Tenth Circuit's decision in *Park University Enterprises, Inc. v. American Casualty Co. of Reading*, 442 F.3d 1239 (10th Cir. 2006). There, the insured was sued in a Kansas state court class action for violating the TCPA by sending unsolicited fax advertisements. As in the instant case, the insured believed it had permission to send the subject fax advertisements and asserted that it did not intentionally violate the TCPA. The insured sought coverage under both the property damage and advertising injury coverages in its insurance policy, but the insurer denied any coverage, and in response, the insured filed a declaratory judgment action. *Park University*, 442 F.3d at 1242-43. The insurer made arguments similar to ICH before the district court, by contending that "this loss of use was not

caused by an occurrence because the loss of use damages were inflicted intentionally by [the insured] and were therefore not the result of an accident within the meaning of the policy." *Park University*, 442 F.3d at 1245. The district court disagreed, finding the possibility of an occurrence within the policy. The court reasoned that "the recipient of a fax is not injured by the loss of paper and use of its fax machine if he or she welcomes or solicits the fax. Thus, because [the insured] believed it was transmitting a fax to a recipient who wished to receive it (whether mistaken or not), one could not conclude it intended to injure the recipient." *Park University*, 442 F.3d at 1245.

On appeal to the Tenth Circuit, the appeals court agreed that "the distinction under Kansas law between intent to act and intent to injure [was] dispositive in this case." *Park University*, 442 F.3d at 1246. The court pointed out that "the policy provides the intent to injure must be inferred from the 'standpoint of the insured.' " *Park University*, 442 F.3d at 1246. Thus, the reviewing court concluded that when the insured sent its fax, it believed it had permission to do so and, thus, "from its standpoint, any resulting use of [the plaintiff's] fax machine, paper, and toner could not have resulted in injury because [the insured] thought the fax was welcome." *Park University*, 442 F.3d at 1246. Accordingly, the court found that an occurrence was possible under the insurance policy and the insurer was required to provide a defense. *Park University*, 442 F.3d at 1247.

The parties in the instant case have presented nearly identical arguments to those advanced in *Park University*. While the question in that case was premised under a TCPA violation and not conversion or trespass, we do not find the difference significant enough to negate this case's relevance to our discussion. We point out that the phrase "from the standpoint of the insured" is also present in the expected or intended exclusion in this case. We agree with the reasoning of the Tenth Circuit that if an insured believed its fax was welcome, then any injury was not expected or intended. In essence, ICH's contention is that the intent to send a fax correlates with an intent to cause property damage under the policy. We cannot adhere to such a narrow interpretation because ICH's view means every fax communication equals intentional property damage by the sender, even if the fax was invited by the recipient.

Here, Shelborne has asserted that it did, in fact, believe that its fax advertisements were authorized, even though the underlying complaint alleges that the fax advertisements were sent "without authorization." However, we cannot make a determination as to Shelborne's intent at the declaratory judgment stage as it would impact the underlying lawsuit. Contrary to ICH's contention that the

complaint only alleged intentional conduct, counts II and III raise the possibility of both intentional or negligent conduct, in that, Shelborne "kn[e]w or should have known" that its action in sending the fax advertisement was "wrongful and without authorization." "[D]eclaratory judgment should not be used to force the parties to an injury action to have a 'dress rehearsal' of an important issue expected to be tried in the injury action." *State Farm Fire & Casualty Co. v. Shelton*, 176 Ill. App. 3d 858, 865 (1988), citing *Employers' Fire Insurance Co. v. Beals*, 103 R.I. 623, 240 A.2d 397 (1968). Therefore, "[w]hen a court is asked to determine whether an insured's conduct is covered under a policy, it must not determine disputed issues of fact which form the basis for the insured's liability in the underlying tort action." *State Farm Mutual Automobile Insurance Co. v. Pfiel*, 304 Ill. App. 3d 831, 834 (1999). "Accordingly, where *bona fide* controversies arise over the issue of negligence versus intentional conduct, declaratory judgment actions are premature until resolution of that question in the underlying tort case." *Pfiel*, 304 Ill. App. 3d at 834.

We cannot resolve at the declaratory judgment stage whether Shelborne intentionally or negligently sent unsolicited fax advertisements to Travel 100 and the class. It is possible under the complaint that Shelborne was negligent in believing the subject fax advertisements were authorized and did not intend to convert the recipients' paper and toner or dispossess them of their fax machines. Thus, it is possible that the property damage was an occurrence that was not expected or intended. Therefore, ICH has a duty to defend Shelborne in the underlying action.

Having determined that the allegations in Travel 100's complaint set forth sufficient facts to bring the underlying lawsuit potentially within the coverage of the ICH policy's "property damage" provision, we need not consider whether ICH has a duty to defend Shelborne pursuant to the policy's "advertising injury" provision. See *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 379 (2006).

Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

O'MALLEY, P.J., and CAHILL, J., concur.