# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Pekin Insurance Co. v. XData Solutions, Inc.*, 2011 IL App (1st) 102769

---

| | |
|---|---|
| Appellate Court Caption | PEKIN INSURANCE COMPANY, Plaintiff-Appellant, v. XDATA SOLUTIONS, INC., an Indiana Corporation, and TARGIN SIGN SYSTEMS, INC., an Illinois Corporation, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-10-2769 |
| Filed | September 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff insurer had duty to defend and indemnify defendant in underlying class action alleging violations of Telephone Consumer Protection Act based on the transmission of unsolicited facsimile advertisements where the allegations in the underlying complaint potentially fell within the coverage of the "advertising injury" provision, or the "property damage" and "occurrence" provisions, and defendant did not violate the "voluntary payment" provision by settling the claim after receiving plaintiff's denial of coverage. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-15303; the Hon. Stuart E. Palmer, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Pretzel & Stouffer, Chtrd., of Chicago (Robert Marc Chemers, Darryl L. Awick, and Scott L. Howie, of counsel), for appellant. |

Anderson + Wanca (Brian J. Wanca and David M. Oppenheim, of counsel), and Bock & Hatch LLC (Phillip A. Bock and Robert M. Hatch, of counsel), both of Chicago, for appellees.

Panel    JUSTICE KARNEZIS delivered the judgment of the court, with opinion. Presiding Justice Hoffman and Justice Hall concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff-appellant Pekin Insurance Company appeals from an order of the circuit court in favor of defendants-appellees XData Solutions, Inc., and Targin Sign Systems, Inc., finding that Pekin had a duty to defend and indemnify XData in an underlying class action lawsuit filed by Targin. On appeal, Pekin contends: (1) it had no duty to defend XData in the underlying lawsuit because the "advertising injury" provision in the insurance policy did not apply to alleged violations of the Telephone Consumer Protection Act (TCPA) (47 U.S.C. § 227 (2006)); (2) it had no duty to defend XData because the "property damage" and "occurrence" provisions in the insurance policy did not apply to intentional acts; and (3) it had no duty to indemnify XData for the settlement amount because XData violated the insurance policy's "voluntary payments" provision.

¶ 2    Background

¶ 3    On December 19, 2005, XData sent an unsolicited fax to Targin advertising its "Integrated Business Solutions" with "Software Systems for All Your Needs." The unsolicited and apparently unappreciated fax caused Targin to file a class action lawsuit against XData for violating the TCPA. The TCPA prohibits the sending of an unsolicited advertisement to a telephone facsimile machine without the receiver's consent. 47 U.S.C. § 227(b)(1)(C). The TCPA also provides for a private right of action, brought by a person or an entity, to recover monetary losses from a violation, or to receive $500 in damages for each violation, whichever is greater. 47 U.S.C. § 227(b)(3)(B). The TCPA further provides that if the violation is willful or knowing, the court may in its discretion triple the damage award. 47 USC § 227(b)(3).

¶ 4    Targin filed the class action complaint in January 2009 in the circuit court of Cook

County against XData.[1] The three-count complaint alleged violations of the TCPA (count I), conversion (count II), and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2008)) (count III). XData tendered defense of the class action to Pekin in February 2009. Pekin declined coverage to XData in March 2009, finding that the allegations in the complaint against XData were not covered under the insurance policy issued to XData. Targin and XData subsequently entered into a settlement agreement, without any input from Pekin, and agreed to settle the class action for $1,975,000. The judgment was to be satisfied solely from the proceeds of XData's insurance policy with Pekin covering the period including December 1, 2005 through December 31, 2005. On June 3, 2009, the court approved the settlement agreement and entered a "Final Approval of Settlement Agreement and Judgment" against XData. The court's order specifically found that XData had sent 4,673 unauthorized fax advertisements to recipients during 2005, but believed that it had their consent when it sent the faxes. The order also specifically found that XData had not intended to injure the recipients when it sent the faxes.

¶ 5    While the underlying action was pending, Pekin filed a complaint for declaratory judgment in the circuit court of Cook County against XData and Targin in April 2009, alleging that it did not have a duty to defend XData in the underlying action. Subsequently, Targin filed a motion for summary judgment and Pekin responded with a cross-motion for summary judgment. The circuit court granted Targin's motion and denied Pekin's motion, finding that Pekin had both a duty to defend and indemnify XData in the underlying action. Pekin now appeals from the court's order.

¶ 6                                    Analysis

¶ 7    On appeal, Pekin first contends that it had no duty to defend XData in the underlying action. To determine whether an insurer has a duty to defend its insured from a lawsuit, a court must compare the facts alleged in the underlying complaint to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). If the facts alleged in the underlying complaint fall within or potentially within the policy's coverage, the insurer is obligated to defend its insured. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006). The allegations in the underlying complaint must be liberally construed in favor of the insured. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). This is true even if the allegations are groundless, false, or fraudulent, and even if only one of several theories of recovery alleged in the complaint falls within the potential coverage of the policy. *United States Fidelity & Guaranty Co.*, 144 Ill. 2d at 73.

¶ 8    A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391

---

[1]Targin, an Illinois corporation, first filed the class action complaint in the circuit court of Cook County against XData, an Indiana corporation. The action was removed to federal court, but was later dismissed and refiled in the circuit court of Cook County.

(1993). Similar to a contract, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose. *Valley Forge*, 223 Ill. 2d at 362. If the words used in the policy, given their plain and ordinary meaning, are unambiguous, they must be applied as written. *Crum & Forster*, 223 Ill. 2d at 391.

¶ 9 The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court that are appropriate for disposition by summary judgment. *Insurance Corp. of Hanover v. Shelborne Associates*, 389 Ill. App. 3d 795, 798 (2009). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Shelborne Associates*, 389 Ill. App. 3d at 798. Appellate review of an order granting or denying a motion for summary judgment is *de novo*. *Outboard Marine Corp.*, 154 Ill. 2d at 102.

¶ 10                    Duty to Defend–"Advertising Injury" Provision

¶ 11 We now address Pekin's contention that it had no duty to defend XData in the underlying lawsuit. Pekin first argues that it had no duty to defend because the underlying complaint's claim under the TCPA did not fall within the policy's coverage for an "advertising injury." Pekin admits that Illinois law has held that "advertising injury" coverage can include a TCPA claim; however, it argues that this is only true for a "natural person" rather than for a corporation, as is the case here. Pekin primarily relies on *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 364-66 (2006), for support.

¶ 12 Here, the complaint alleged that XData violated the TCPA by sending advertising faxes to Targin and other members of the class without first obtaining their express invitation or permission, as required by the TCPA. The complaint further alleged that the faxes unlawfully interrupted Targin and the other class members' privacy interests in being left alone.

¶ 13 The insurance policy issued to XData by Pekin provided that it applied to an:

" '[a]dvertising injury' caused by an offense committed in the course of advertising your goods, products or services."

¶ 14 The insurance policy defined "[a]dvertising injury" as an "injury arising out of one or more of the following offenses":

"Oral or written publication of material that violates a person's right of privacy."

¶ 15 Comparing the allegations in the underlying complaint with the provisions in the insurance policy, we find that the complaint's claim pursuant to the TCPA falls within or potentially within the coverage of the policy's "advertising injury" provision. The complaint specifically alleged that the unsolicited fax violated the TCPA and was an invasion into Targin's and the other class members' privacy interests. The insurance policy provided coverage for the written publication of material that violated a person's right of privacy. Therefore, the allegations in the underlying complaint triggered Pekin's duty to defend XData in the underlying lawsuit.

¶ 16    Our conclusion is supported by our supreme court's decision in *Valley Forge*, though for different reasons than Pekin argues. In *Valley Forge*, the court determined that the insured's violation of the TCPA constituted an "advertising injury" under the insurance policy and the insurer had a duty to defend the insured. The complaint had alleged that the insured violated the TCPA by sending unsolicited fax advertisements. The insurance policy provided that an "advertising injury" included injury from "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." The court specifically found that the allegation in the complaint fell within or potentially within the insurance policy, so the insurer had a duty to defend the insured. *Valley Forge*, 223 Ill. 2d at 368.

¶ 17    Here, similarly, the "advertising injury" provision in XData's insurance policy covered the "publication of material that violates a person's right of privacy." The underlying complaint alleged that XData sent the faxes without the recipients' prior consent and its actions violated their privacy interests in being left alone. Notably, the allegations in the underlying complaint were more specific than the allegations in the complaint in *Valley Forge*. If the general allegation in *Valley Forge* that the insured violated the TCPA was sufficient to bring the claim within or potentially within the policy's coverage for an "advertising injury," then the more specific allegations in the underlying complaint in the case at bar should also compel the same result (*i.e.*, the allegations are sufficient to bring the claim within or potentially within the policy's coverage for an "advertising injury").

¶ 18    Contrary to Pekin's assertion, we do not agree that *Valley Forge* stands for the proposition that coverage for an "advertising injury" in an insurance policy for a violation of the TCPA only applies to "natural" persons rather than to corporations. While the underlying class action complaint in *Valley Forge* was filed by an individual, on behalf of himself and on behalf of the class, our supreme court in *Valley Forge* did not distinguish between a person's right to privacy or that of a corporation.

¶ 19    Additionally, *Valley Forge* declined to follow the Seventh Circuit's analysis of privacy issues in *American States Insurance Co. v. Capital Associates of Jackson County, Inc.*, 392 F.3d 939, 942 (7th Cir. 2004), in which the Seventh Circuit distinguished between secrecy rights and seclusion rights, finding that corporations lacked seclusion rights. *American States*, 392 F.3d at 942. The court in *Valley Forge* specifically noted the Seventh Circuit's distinction in *American States*, but found that the distinction, which was based on the foundations of privacy law, was inconsistent with the court's approach to interpreting insurance policy provisions by giving policy terms their plain, ordinary and popularly understood meanings. *Valley Forge*, 223 Ill. 2d at 378-79. Since the court in *Valley Forge* specifically rejected the privacy distinctions between secrecy and seclusion and their effect on persons versus corporations, had the court intended for its holding to apply only to "natural" persons rather than to corporations, it would have so stated. The court made no such limitation to its holding. We decline to interpret such a distinction, as urged by Pekin, where we find no evidence of any intention by the court to make a distinction. Further, despite the class action complaint in *Valley Forge* being filed by an individual, the court did not specify whether the class members were comprised of individuals or corporations or both. Again, had the court intended for there to be a distinction between individuals and corporations, it would have discussed that distinction, specifically noting the makeup of class

members. Moreover, we note that *American States* was decided prior to any Illinois state court having considered the scope of privacy coverage under an "advertising injury" clause, so the court did not have any guidance as to how an Illinois state court would have analyzed the issue. Therefore, pursuant to our supreme court's holding in *Valley Forge*, we conclude that the allegations in the underlying complaint triggered Pekin's duty to defend XData and Pekin breached the contract by declining coverage.

¶ 20    Furthermore, it is clear that the TCPA applies to both individuals and to other entities such as corporations. Section (b)(3) of the TCPA specifically provides a right of action for "[a] person or entity." 47 U.S.C. § 227(b)(3). Accordingly, we find no support for Pekin's contention that only natural persons rather than individuals can recover for claimed violations of the TCPA.

¶ 21    Pekin further argues that we should not apply Illinois law, and instead should apply Indiana law, which does not extend insurance coverage for an "advertising injury" to TCPA claims. See *Ace Mortgage Funding, Inc. v. Travelers Indemnity Co. of America*, No. 1:05-cv-1631-DFH-TAB, 2008 WL 686953 (S.D. Ind. Mar. 10, 2008); *Erie Insurance Exchange v. Kevin T. Watts, Inc.*, No. 1:05-cv-867-JDT-TAB, 2006 WL 1547109 (S.D. Ind. May 30, 2006). Pekin maintains that Illinois and Indiana law are in conflict and, because Indiana has the most significant contacts to this case, we should apply Indiana law.

¶ 22    A choice of law determination is only necessary when "a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007). Choice of law considerations are not implicated unless there is an actual conflict in the law of the two states. *Sterling Finance Management, L.P. v. UBS PaineWebber, Inc.*, 336 Ill. App. 3d 442, 447 (2002). Pekin also raised this contention before the circuit court in its motion for summary judgment. Finding that there were only two federal court decisions on the issue, and no state law, the court determined that a choice of law analysis was not necessary because there was no Indiana state law with which to conflict. Pekin disagrees, arguing on appeal that the federal court sitting in the state of Indiana is an accurate predictor of what law an Indiana state court would follow.

¶ 23    Here, we agree with the circuit court that there is no Indiana state law on the issue before us, so there can be no conflict with Illinois law. The two federal cases upon which Pekin relies merely acknowledge that they can only attempt to "predict" Indiana law because there has been no state court decision on the issue. See *Ace Mortgage Funding*, 2008 WL 686953, at *3. Accordingly, we cannot conclude that the federal cases represent Indiana state law for the purposes of engaging in a choice of law analysis. Therefore, since there is no Indiana state law on the issue of whether there can be coverage for a TCPA claim under an "advertising injury" provision in an insurance policy, there can be no conflict with Illinois law, and Illinois law applies here.

¶ 24            Duty to Defend–"Property Damage" and "Occurrence" Provisions

¶ 25    Next, Pekin contends that it had no duty to defend XData in the underlying lawsuit because the underlying complaint's claim for conversion did not fall within the policy's coverage for "property damage." Pekin argues that there was no coverage pursuant to the

"property damage" provision in the policy because the underlying complaint did not allege an "occurrence" as defined in the Pekin policy. Pekin maintains that an "occurrence" as defined in the policy applies to accidental acts, not intentional acts such as sending faxes. Pekin acknowledges that the circuit court's order, in which it determined that Pekin owed a duty to defend XData pursuant to the policy's "property damage" provision, relying on *Shelborne Associates*, was "accurate in its account of Illinois law on this issue." However, Pekin argues that the court erred in refusing to apply Indiana state law to this issue, which would resolve the issue in Pekin's favor.

¶ 26    Here, as we found above, because there is no Indiana state law interpreting claims based on the TCPA, there is no conflict with Illinois law, and we will follow Illinois law. Therefore, Pekin had a duty to defend XData in the underlying lawsuit pursuant to the "property damage" and "occurrence" provisions in the insurance policy.

¶ 27                    Duty to Indemnify–"Voluntary Payments" Provision

¶ 28    Lastly, Pekin contends that it did not have a duty to indemnify XData for the settlement amount because XData violated the policy's "voluntary payments" provision. Pekin argues that when XData settled the underlying lawsuit without Pekin's consent, XData breached a material condition of the policy, relieving Pekin of any obligation to indemnify XData.

¶ 29    An insurer's duty to indemnify is narrower than its duty to defend. *Westchester Fire Insurance Co. v. G. Heileman Brewing Co.*, 321 Ill. App. 3d 622, 636 (2000). A "voluntary payment" provision provides that an insurer will not be held liable for expenses voluntarily incurred by an insured before tendering defense of a suit to the insurer. *Westchester Fire Insurance Co.*, 321 Ill. App. 3d at 637. Also, "in the absence of a breach of the duty to defend, an insured must obtain the consent of the insurer before settling with an injured plaintiff." *Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill. 2d 141, 149 (2003). The purpose of the "voluntary payment" provision is to prevent collusion between the insured and the injured party. *Westchester Fire Insurance Co.,* 321 Ill. App. 3d at 637; *Myoda Computer Center, Inc. v. American Family Mutual Insurance Co.*, 389 Ill. App. 3d 419, 422 (2009). An insurer seeking to avoid responsibility because of a breach of this clause must show prejudice. *Westchester Fire Insurance Co.*, 321 Ill. App. 3d at 637.

¶ 30    The "voluntary payment" provision in Pekin's policy to XData provided: "[n]o insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

¶ 31    Here, we conclude that XData did not breach the "voluntary payment" provision in the insurance policy. First, XData settled with Targin and the class members after tendering defense of the underlying lawsuit to Pekin and after receiving Pekin's denial of coverage. The underlying class action complaint was filed in January 2009. XData tendered its defense to Pekin in February 2009, and Pekin declined coverage in March 2009. Having been abandoned by its insurer, XData entered into a settlement agreement in the underlying lawsuit in June 2009. Since the settlement agreement was entered into subsequent to tendering defense of the action to Pekin, XData did not breach the "voluntary payment" provision. Second, because we have determined that Pekin breached its duty to defend XData

-7-

by denying coverage, XData did not need Pekin's consent before entering into the settlement agreement.

¶ 32    We are mindful that the above principles have been put in place to prevent collusion between the insured and the injured party. Here, however, we find no evidence of collusion. Pekin characterizes the settlement agreement as "substantial" and argues that had it not been for the settlement, Pekin could have undertaken the defense and successfully defeated the class action or litigated it to a nominal judgment. We remind Pekin that when Pekin declined coverage to XData, it chose to not undertake the defense. Pekin charted its own course and cannot now complain that it would have had a better finish had XData not been in charge.

¶ 33    Further, although we need not assess whether the settlement amount was reasonable, we note the circuit court found that XData had sent 4,673 unauthorized fax advertisements to recipients during 2005. The TCPA provides recovery for the greater of: monetary losses from a violation or $500 in damages for each violation. 47 U.S.C. § 227(b)(3)(B). A possible recovery of $500 for each violation would amount to $2,336,500. Section 227(b)(3) of the TCPA further provides that if the violation is willful or knowing, a court may triple the damage award. 47 U.S.C. § 227(b)(3). As a result of the underlying lawsuit, XData was potentially facing several million dollars in liability. The settlement agreement for just under $2 million is far less than XData's potential liability.

¶ 34    Accordingly, we affirm the judgment of the circuit court.

¶ 35    Affirmed.