# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Bridgeview Health Care Center, Ltd. v. State Farm Fire & Casualty Co.,**
**2013 IL App (1st) 121920**

---

| | |
|---|---|
| Appellate Court Caption | BRIDGEVIEW HEALTH CARE CENTER, LTD., Individually and on Behalf of a Class of Similarly Situated Persons, Plaintiff-Appellee, v. STATE FARM FIRE and CASUALTY COMPANY, Defendant-Appellant (Jerry Clark, d/b/a Affordable Digital Hearing, Defendant). |
| District & No. | First District, Third Division<br>Docket No. 1-12-1920 |
| Filed | June 19, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court reversed the entry of summary judgment for plaintiff in an action seeking a declaratory judgment that defendant insurer was obligated under the commercial liability policy it issued to defend and indemnify the insured, an Indiana business, in the underlying suit alleging that the insured sent unsolicited faxes to plaintiff, since a potential conflict existed between Illinois and Indiana law as to whether the policy provided the coverage at issue, and the cause was remanded for a determination of whether Illinois or Indiana law governed the controversy. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-28169; the Hon. Rita M. Novak, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal

Dykema Gossett, PLLC, of Chicago (Michael C. Borders and Rosa Tumialan, of counsel), for appellant.

Anderson & Wanca, of Rolling Meadows (Brian J. Wanca and David M. Oppenheim, of counsel), and Bock & Hatch, LLC (Phillip A. Bock, of counsel), and Gardner Koch & Weisberg (Vincent A. Lavieri, of counsel), both of Chicago, for appellee.

Meckler Bulger Tilson Marick & Pearson, of Chicago (Michael M. Marick, Karen M. Dixon, and Timothy H. Wright, of counsel), for *amicus curiae*.

Panel

PRESIDING JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Justices Sterba and Hyman concurred in the judgment and opinion.

## OPINION

¶ 1    Bridgeview Health Care Center filed a complaint against Jerry Clark for sending it unsolicited faxes. Bridgeview then filed a declaratory judgment action against Clark's insurer, State Farm Fire and Casualty Company, seeking a declaration that State Farm had a duty to defend and indemnify Clark in the underlying lawsuit for the unsolicited faxes. Bridgeview filed a motion for summary judgment in the declaratory judgment action, relying on decisions of the Illinois courts to show that State Farm had a duty to defend Clark. State Farm filed a motion for summary judgment claiming that Indiana law applied and that decisions of the federal court sitting in Indiana established that State Farm had no duty to defend. The trial court found that the federal decisions did not prove a conflict between Indiana law and Illinois law, so Illinois law applied. Under Illinois law, State Farm had a duty to defend Clark. The trial court granted summary judgment in favor of Bridgeview.

¶ 2    In this appeal, we find that in the absence of controlling authority from Indiana's state courts on the question at issue in a case, this court should conduct a conflict analysis. We reverse the trial court's judgment and remand for the trial court to determine which state has the most significant contacts with the dispute, and for the application of that state's law to the dispute.

¶ 3                                    BACKGROUND

¶ 4    Jerry Clark, an Illinois resident, ran his own unincorporated business in Terre Haute, Indiana, selling and repairing hearing aids. In September 2005, Clark purchased

comprehensive business liability insurance from State Farm, to cover his business activities in Indiana. Clark bought the policy through an insurance agency located in Terre Haute, Indiana, and State Farm's offices in West Lafayette, Indiana, issued the policy in exchange for a check Clark drew on his account in an Indiana bank.

¶ 5     In 2009, Bridgeview filed the underlying lawsuit against Clark in the United States District Court for the Northern District of Illinois, alleging that in 2006, Clark faxed an unsolicited advertisement to Bridgeview's business offices in Chicago. In the first count of the complaint, Bridgeview claimed that Clark violated the Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. § 227 (2000)). The second count charged Clark with conversion of Bridgeview's toner, paper and employee time, and the third count charged Clark with violating the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2006)).

¶ 6     Clark tendered defense of the lawsuit to State Farm. State Farm accepted the defense subject to a reservation of the right to deny coverage, and it paid Clark's independent counsel's fees to fulfill its possible responsibility to provide a defense.

¶ 7     On June 30, 2010, Bridgeview filed a lawsuit against State Farm and Clark, seeking a judgment declaring that State Farm had a duty to defend and indemnify Clark in the underlying lawsuit, because the unwanted faxes caused both advertising injury and property damage within the meaning of State Farm's policy. State Farm filed a counterclaim against Bridgeview and Clark, seeking a judgment declaring that it had no duty to defend or indemnify Clark in the underlying lawsuit.

¶ 8     Both Bridgeview and State Farm filed motions for summary judgment. Bridgeview presented an affidavit from Clark, who said that in 2006, Business to Business Solutions (BBS), which operated out of New York, persuaded Clark to hire BBS to help market Clark's business. BBS told Clark it would fax ads to about 100 businesses located within 20 miles of Terre Haute. Clark did not authorize BBS to fax ads to Bridgeview or any other businesses or individuals in Chicago. BBS did not inform Clark when it sent the advertisements, and BBS did not tell Clark where it sent the advertisements. According to his affidavit, Clark did not conduct any of his hearing aid business in Illinois, and he did not solicit clients from Illinois.

¶ 9     State Farm admitted that it has its principal place of business in Illinois. However, State Farm argued that Indiana law should apply to the coverage dispute because Indiana had the most significant contacts with the dispute. Bridgeview answered that Illinois had more significant contacts and that Indiana law did not differ from Illinois law on the question of whether State Farm had a duty to defend and indemnify Clark in the underlying lawsuit.

¶ 10    The trial court found that the decision in *Pekin Insurance Co. v. XData Solutions, Inc.*, 2011 IL App (1st) 102769, governed the declaratory judgment action here. In *Pekin*, Targin, an Illinois corporation, sued XData, an Indiana corporation, for faxing ads to Targin in violation of the TCPA. Targin also sued for conversion of its paper and toner used in the fax machine. XData tendered defense of the lawsuit to its insurer, Pekin, which promptly sued for a judgment declaring that, under Indiana law, it had no duty to defend XData.

¶ 11    The parties agreed that no published decision of the Indiana state courts had addressed

the issue of whether a commercial liability policy covered claims for violations of the TCPA as either advertising injury or property damage. Pekin relied on two decisions of federal courts sitting in Indiana. The district courts that decided *Ace Mortgage Funding, Inc. v. Travelers Indemnity Co. of America*, No. 1:05-cv-1631-DFH-TAB, 2008 U.S. Dist. LEXIS 18696 (S.D. Ind. Mar. 10, 2008), and *Erie Insurance Exchange v. Kevin T. Watts, Inc.*, No. 1:05-cv-867-JDT-TAB, 2006 U.S. Dist. LEXIS 35828 (S.D. Ind. May 30, 2006), predicted that Indiana courts would hold that the commercial liability policies at issue in those cases did not provide coverage for charges that the insureds violated the TCPA or that they caused property damage to the recipients of unwelcome faxes.

¶ 12    The *Pekin* court held:

"[W]e agree with the circuit court that there is no Indiana state law on the issue before us, so there can be no conflict with Illinois law. The two federal cases upon which Pekin relies merely acknowledge that they can only attempt to 'predict' Indiana law because there has been no state court decision on the issue. [Citation.] Accordingly, we cannot conclude that the federal cases represent Indiana state law for the purposes of engaging in a choice of law analysis. Therefore, since there is no Indiana state law on the issue of whether there can be coverage for a TCPA claim under an 'advertising injury' provision in an insurance policy, there can be no conflict with Illinois law, and Illinois law applies here." *Pekin Insurance*, 2011 IL App (1st) 102769, ¶ 23.

¶ 13    The trial court here found that *Pekin* constrained the analysis of the case and left the court unable to conduct an independent analysis. Following *Pekin*, the court found that State Farm had not shown that Indiana law conflicted with Illinois law on the question at issue in this case, so Illinois law applied. The trial court also held that the alleged faxes caused advertising injury and accidental property damage, within the meaning of State Farm's policy. The trial court denied State Farm's motion for summary judgment and granted summary judgment in favor of Bridgeview, holding that State Farm had a duty to defend Clark in the underlying lawsuit. The trial court found no just cause to delay enforcement or appeal of its judgment. State Farm now appeals.

¶ 14                                    ANALYSIS

¶ 15    Supreme Court Rule 304(a) gives this court jurisdiction to consider this appeal. Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). We review *de novo* an order granting a motion for summary judgment. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 16    State Farm concedes that the trial court correctly applied the reasoning of *Pekin*. State Farm and the American Insurance Association (AIA), which filed an *amicus curiae* brief, argue that the appellate court decided *Pekin* wrongly. According to State Farm and AIA, the federal decisions predicting Indiana law show a conflict between Indiana law and Illinois law on the issue of whether the commercial liability policy at issue here provides coverage for the alleged violation of the TCPA and the alleged conversion of Bridgeview's property. State Farm and AIA also contend that under general choice-of-law principles, Indiana law governs the dispute.

-4-

¶ 17     When this court must resolve a case in which multiple jurisdictions have an interest, this court must first determine whether the laws of the interested jurisdictions conflict. See *Allianz Insurance Co. v. Guidant Corp.*, 373 Ill. App. 3d 652, 658 (2007). This court needs to determine which jurisdiction's law applies only when "a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007).

¶ 18     Our supreme court's decision in *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352 (2006), establishes that if Illinois law applies, State Farm has a duty to defend Clark. In *Valley Forge*, our supreme court held that a commercial liability policy much like the policy at issue here required the insurer to defend its insured against a charge that the insured violated the TCPA by sending unsolicited faxes. The *Valley Forge* court held that the faxes allegedly breached the recipient's privacy interests, and thus they caused "advertising injury" within the meaning of the policy's coverage. *Valley Forge*, 223 Ill. 2d at 368.

¶ 19     No decision of any Indiana state court establishes what result would follow if Indiana law applies. When other courts have found the law of another interested jurisdiction uncertain, those courts have undertaken a choice-of-law analysis to decide which jurisdiction's law applies. As the court said in *Sterling Finance Management, L.P. v. UBS PaineWebber, Inc.*, 336 Ill. App. 3d 442, 451 (2002), "[b]ased on the uncertainty of New York law, *** we believe it prudent to consider that an actual conflict may exist between New York and Illinois law and undertake a choice-of-law analysis." And similarly, the court in *Associated Press v. All Headline News Corp.*, 608 F. Supp. 2d 454, 459-60 (S.D.N.Y. 2009), said:

"The plaintiff argues that no conflict exists between the laws of New York and Florida, and that a claim for hot news misappropriation 'would' be recognized under Florida law. *** No authority has been cited to show that Florida recognizes a cause of action for hot news misappropriation. Then again, defendants have not persuasively demonstrated that Florida would *not* recognize such a claim. Because of the uncertainty as to whether an actual conflict exists, I will assume for the purposes of this motion that there is such a conflict, and proceed to the next step of a choice-of-law analysis." (Emphasis in original.)

¶ 20     The analysis undertaken in *Sterling* and *Associated Press* comports with the application of the choice-of-law doctrine in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985). In *Shutts*, the Kansas Supreme Court applied Kansas substantive law to a dispute over royalties despite Oklahoma's contacts with the case. The Kansas court found a defendant from Oklahoma liable and awarded the plaintiff interest in accord with Kansas's decisions. The United States Supreme Court noted that no Oklahoma decision dealt with the interest liability for suspended royalties, and the court noted that an Oklahoma statute allowed interest at a rate lower than the rate of interest the Kansas court awarded. *Shutts*, 472 U.S. at 816-17. The dissent pointed out that a Kansas statute closely matched the Oklahoma statute the majority cited, but the Kansas court held that the statute did not limit the interest available to the plaintiffs under the circumstances of the case. *Shutts*, 472 U.S. at 831 n.10 (Stevens, J., concurring in part and dissenting in part). Despite the lack of a clear conflict between the pertinent laws of Kansas and Oklahoma, the Court found that the application of Kansas substantive law to the claims against the Oklahoma defendant violated that

defendant's constitutional rights and required a remand for the Kansas court to determine anew what state's law applied to each transaction at issue. *Shutts*, 472 U.S. at 823.

¶ 21    In addition, the analysis undertaken in *Sterling* and *Associated Press* serves the purposes of the choice-of-law doctrine. The United States Supreme Court explained, "The purpose of a conflict-of-laws doctrine is to assure that a case will be treated in the same way under the appropriate law regardless of the fortuitous circumstances which often determine the forum." *Lauritzen v. Larsen*, 345 U.S. 571, 591 (1953). When the courts of one state have not spoken to an issue, their eventual resolution of the issue might conflict with the resolution reached in another state. If the forum applies its own law simply because the other interested jurisdictions have not spoken on the issue, the result of the case may well depend on the fortuitous circumstances that determine the forum.

¶ 22    Therefore, because the decision in *Pekin* conflicts with better reasoned cases and the purpose of the choice-of-law doctrine, we do not follow *Pekin* insofar as the court in *Pekin* said, "there is no Indiana state law on the issue before us, so there can be no conflict with Illinois law." *Pekin Insurance*, 2011 IL App (1st) 102769, ¶ 23. Instead, we find that because the application of Indiana law could possibly lead to a different result than that reached under Illinois law, the trial court must first determine which state has the most significant contacts to the dispute, and then apply to the dispute the law of the state with the most significant contacts. See *United Farm Family Mutual Insurance Co. v. Frye*, 381 Ill. App. 3d 960, 965 (2008). If the trial court finds that Indiana has the most significant contacts to the dispute, it must attempt to determine what Indiana courts would do in this case. Because no published decision of any Indiana state court has addressed the determinative issues in this case, the trial court should use decisions from the federal courts and the courts of other states, as well as law reviews, treatises, and other sources, in an attempt to predict how the Indiana courts would decide the determinative issues here. Accordingly, we hold that the potential for conflict between Indiana law and Illinois law requires the trial court to engage in a choice-of-law analysis for the case.

¶ 23                                    CONCLUSION

¶ 24    This lawsuit raises the issue of whether an insurer that provides coverage for accidental property damage and advertising injury must defend an insured against charges that it sent unsolicited faxes. Because Indiana state courts have not yet addressed this issue, the potential conflict with Illinois law requires the trial court to determine whether Illinois law or Indiana law governs this coverage dispute. We reverse the trial court's judgment and remand for further proceedings in accord with this opinion.

¶ 25    Reversed and remanded.