**Telecommunications Network Design Inc. v. Brethren Mutual Insurance Co.**

266

*Alan C. Milstein, Brian J. Wanca* and *Steven A. Smith* for plaintiffs.

*Richard E. Rush, William J. Rogers, Michael J. Stack Jr.* and *Jerome A. Zaleski,* for defendant.

ABRAMSON, *J.,* May 10, 2007—Plaintiff Paradise Distributing Inc. was the insured under two Business

Owners' Liability Coverage insurance policies issued by defendant Brethren Mutual Insurance Company for the periods July 8, 2001 through July 8, 2002 and July 8, 2002 through July 8, 2003. In May, 2003, Paradise was sued by plaintiff Telecommunications Network Design Inc. (TND) in the Circuit Court of Cook County Illinois (the underlying action). In that action, TND claimed to represent a class of persons and entities who had wrongfully received advertisements for Paradise's services by facsimile transmission.

Brethren refused to defend and indemnify Paradise under the policies in the underlying action. Ultimately, Paradise and the class settled and "the court enter[ed] judgment against [Paradise] and in favor of the class in the total amount of $3,999,999 . . . said judgment to be satisfied only from the proceeds of the insurance policies which [Paradise] assigned to plaintiff class."[1] As a result of this settlement, TND and Paradise brought this action against Brethren for defense costs, indemnification of the settlement amount, and bad faith damages.

This court bifurcated the case, so that the issue of whether Brethren had a duty to defend Paradise in the underlying action could be addressed first. Only if such a duty is found to exist will the issues of indemnification and bad faith subsequently need to be addressed. Both Brethren and TND/Paradise have filed motions for judgment on the pleadings regarding the duty to defend, which motions are presently before the court.

"A court's first step in a declaratory judgment action concerning insurance coverage is to determine the scope

---

1. Complaint, ¶25.

of the policy's coverage."[2] The policies provide as follows:

"We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' or offense and settle any claim or 'suit' that may result."[3]

Paradise does not claim that it is covered under the "bodily injury" provisions, but it does claim coverage under the "property damage," "advertising injury" and "personal injury" provisions.

Under the policies, "property damage" must be caused by an "occurrence" in order to be covered.[4] "Property damage" is defined as "physical injury to tangible property" and "loss of use of tangible property."[5] "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[6] "Property damage" that is "ex-

---

2. *General Accident Insurance Company of America v. Allen,* 547 Pa. 693, 706, 692 A.2d 1089, 1095 (1997).

3. First Policy, §A.1.a; Second Policy, §A.1.a. The Second Policy also states that "we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' to which this insurance does not apply." Second Policy, §A.1.a. This language simply makes explicit that which was implicit in the First Policy, and it does not alter the coverage provided.

4. First Policy, §A.1.b.1; Second Policy, §A.1.b.1.

5. First Policy, §F.15; Second Policy, §F.15.

6. First Policy, §F.12; Second Policy, §F.12.

pected or intended from the standpoint of the insured" is not covered.[7]

In order to be covered, "personal injury" must be "caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you."[8] "Personal injury" must also arise out of certain enumerated acts including "oral or written publication of material that violates a person's right of privacy."[9]

"Advertising injury" is covered only if it is "caused by an offense committed in the course of advertising your goods, products or services."[10] "Advertising injury" must arise out of certain enumerated acts including "oral or written publication of material that violates a person's right to privacy."[11]

"After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage. If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim

7. First Policy, §B.1.a; Second Policy, §B.1.a.

8. First Policy, §A.1.b.2.a; Second Policy, §A.1.b.2.a.

9. First Policy, §F.13.e; Second Policy, §F.13.e. The other enumerated acts are false imprisonment, malicious prosecution, wrongful eviction, defamation and disparagement, none of which are applicable here.

10. First Policy, §A.1.b.2.b; Second Policy, §A.1.b.2.b.

11. First Policy, §F.1.b; Second Policy, §F.1.b. The other enumerated acts are defamation and disparagement, misappropriation of ideas or style, and copyright and title infringement, none of which are applicable here.

is confined to a recovery that the policy does not cover."[12]

In its original complaint, TND, on behalf of a class of others similarly situated, asserted claims against Paradise for violation of the federal Telephone Consumer Protection Act (TCPA),[13] for common-law conversion, and for violation of the Illinois Consumer Fraud and Deceptive Practices Act (ICFDPA). Specifically TND alleged as follows:

"[Paradise] transmitted by telephone facsimile machine an unsolicited advertisement [as defined by the TCPA] to a facsimile machine owned by [TND].[14] . . .

"[Paradise] violated [the TCPA] by transmitting exhibit A to [TND] and the other members of the class without obtaining their consent and without having a prior business relationship with them.

"[Paradise's] actions caused damages to [TND] and the other class members, because their receipt of [Paradise's] unsolicited fax advertisements caused them to lose paper and toner consumed as a result.

"If the evidence shows [Paradise's] violation was willful, [TND] requests that the court treble the damages.[15] . . .

"By sending [TND] and the other class members unsolicited faxes, [Paradise] improperly and unlawfully

---

12. *General Accident Insurance Company of America v. Allen,* 547 Pa. 693, 706, 692 A.2d 1089, 1095 (1997).

13. 47 U.S.C §227.

14. Class action complaint, ¶12.

15. *Id.,* ¶¶24-26.

converted their fax machine and paper to its own use.[16]
. . .

"By sending the unsolicited faxes, [Paradise] permanently misappropriated the class members' fax machine toner and paper to [Paradise's] own use. Such misappropriation was wrongful and without authorization.

"[Paradise] knew or should have known that its misappropriation of paper and toner was wrongful and without authorization.[17] . . .

"[Paradise's] unsolicited fax practice is an unfair practice, because it violates public policy, because it forced [TND] and the other class members to incur expense without any consideration.

"[Paradise] violated the unfairness predicate of the [ICFDPA] by engaging in an unscrupulous business practice and by violating Illinois statutory public policy, which public policy violations in the aggregate caused substantial injury to hundreds of persons."[18]

TND subsequently amended its complaint to add Canafax Marketing as a defendant. Canafax was apparently retained by Paradise to transmit the offending faxes to the class.[19] The first amended class action complaint contained the following allegations that differ slightly from those contained in the original complaint:

"[Paradise and Canafax] transmitted by telephone facsimile machine an unsolicited advertisement to [TND's] facsimile machine.[20] . . .

---

16. *Id.,* ¶32.
17. *Id.,* ¶¶34-35.
18. *Id.,* ¶¶44-45.
19. See first amended class action complaint, ¶10.
20. *Id.,* ¶11.

"The [TCPA] is a strict liability statute, so [Paradise and Canafax] are liable to [TND] and the other class members even if their actions were only negligent.

"If the court finds that [Paradise and Canafax] willfully and knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, [treble the damages awarded].

"[Paradise and Canafax] violated [the TCPA] by transmitting exhibit A hereto to [TND] and the other members of the class without obtaining their prior express permission or invitation.[21] . . .

"[Paradise's and Canafax's] actions caused damages to [TND] and the other class members because their receipt of [Paradise's and Canafax's] unsolicited fax advertisements caused them to lose paper and toner consumed as a result. [Paradise's and Canafax's] actions prevented [TND's] fax machine from being used for [TND's] business purposes during the time [Paradise and Canafax] were using [TND's] fax machine for [Paradise's and Canafax's] illegal purpose. [Paradise's and Canafax's] actions also cost [TND] employee time, as [TND's] employees used their time receiving, routing and reviewing [Paradise's and Canafax's] illegal faxes and that time otherwise would have been spent on [TND's] business activities.[22] . . .

"By sending [TND] and the other class members unsolicited faxes, [Paradise and Canafax] improperly and unlawfully converted [TND's] fax machine toner, paper and employee time to their own use.[23] . . .

---

21. *Id.,* ¶¶23-25.
22. *Id.,* ¶27.
23. *Id.,* ¶34.

"[Paradise and Canafax] knew or should have known that their misappropriation of [TND's] resources was wrongful and without authorization.

"[TND] and the other class members were deprived of valuable resources, which because of [Paradise and Canafax] could not be used for any other purpose. [Paradise's and Canafax's] unsolicited faxes caused unauthorized wear and tear of the class members' machines.[24] . . .

"[The ICFDPA] makes it a petty criminal offense to transmit unsolicited facsimile advertisements to Illinois residents and sets a $500 fine for each violation of this criminal statute.

"[Paradise's and Canafax's] unsolicited fax practice is an unfair practice because it violates public policy. It forced [TND] and the other class members to incur expense without any consideration.[25] . . .

"Through its repeated misconduct, [Paradise and Canafax] caused substantial injury to the class and caused them economic damage, including the loss of paper, toner, ink, wear and tear on their facsimile machines, and business interruption. By faxing unsolicited advertisements to them, [Paradise and Canafax] forced the class members to pay for [Paradise's and Canafax's] advertising campaign, when they had no obligation to pay any portion of [Paradise's and Canafax's] costs."[26]

---

24. *Id.*, ¶¶36-37
25. *Id.*, ¶¶44-45.
26. *Id.*, ¶48.

## I. BRETHREN HAD NO DUTY TO DEFEND PARADISE UNDER THE PERSONAL INJURY COVERAGE PROVISIONS

As both complaints make clear, the faxes sent by Paradise and/or Canafax were sent as part of an advertising campaign for Paradise's services. There is no coverage under the "personal injury" provisions of the policies if the offense out of which the personal injury arises constitutes "advertising."[27] Since the complaints allege improper transmission of advertising faxes, they do not allege a potentially covered personal injury.

## II. BRETHREN HAD NO DUTY TO DEFEND PARADISE UNDER THE ADVERTISING INJURY COVERAGE PROVISIONS

The complaints do not allege that the class members were harmed by the content of the faxes transmitted; instead their claimed harm arises solely from the improper transmittal of the faxes to them. However, the advertising injury provisions of the policies cover only "publication of material that violates a person's right to privacy."[28] Since the modifying clause beginning with the word "violates" was placed at the very end of the sentence, next to the word "material," it is clear that the content of the communication must be the cause of the harm, not the mere "publication" or transmission of it. If one were to read this provision as TND would like, with the clause that begins with "violates" modifying the word "publication," then the words "of material" would

---

27. First Policy, §A.1.b.2.a; Second Policy, §A.1.b.2.a.
28. First Policy, §F.13.e; Second Policy, §F.13.e.

be rendered meaningless, which is not a proper result.[29] Since the complaints allege improper transmission of unsolicited faxes whose content was harmless, they do not allege a potentially covered advertising injury.[30]

## III. BRETHREN HAD A DUTY TO DEFEND PARADISE UNDER THE PROPERTY DAMAGE COVERAGE PROVISIONS

Both complaints allege that Paradise caused "property damage" to TND by using its toner and paper without permission and by causing TND to lose the use of its facsimile machine temporarily. The question is whether the complaints also allege that such "property damage" was accidental, *i.e.,* not "expected or intended from the standpoint of" Paradise.[31] Brethren argues that sending

---

29. "[T]he cardinal principle of interpretation [is] that an insurance policy must be construed in such a manner as to give effect to all of its provisions. Nor may it be construed in such a way as to render any part of it useless and unnecessary." *Mutual of Omaha Insurance Company v. Bosses,* 428 Pa. 250, 254, 237 A.2d 218, 220 (1968).

30. See *Am. States Ins. Co. v. Capital Assocs. of Jackson County,* 392 F.3d 939, 943 (7th Cir. 2004) (The TCPA "condemns a particular means of communicating an advertisement—rather than the contents of that advertisement—while an advertising-injury coverage deals with informational content"); *Melrose Hotel Co. v. St. Paul Fire and Marine Ins. Co.,* 432 F. Supp.2d 488, 502 (E.D. Pa. 2006) (The offenses enumerated in [the advertising injury] provision clearly relate to the content of the covered material . . . All of these offenses address the message conveyed rather than the method of conveyance"). But see *Park Univ. Enters. Inc. v. Am. Cas. Co. of Reading, Pa.,* 442 F.3d 1239, 1251 (10th Cir. 2006) ("The transmission of an allegedly unsolicited fax can constitute a publishing act, while receiving the same can result in an invasion of privacy. An asserted TCPA violation easily dovetails, therefore, with the language in the insurance policy").

31. First Policy, §B.1.a; Second Policy, §B.1.a.

facsimiles is an intentional act, so there is no coverage. TND argues that the TCPA is a strict liability statute and a claim for violation of it does not have to be based on an intentional act,[32] so there is a duty to defend, at least until it became clear that Paradise intentionally transmitted its advertisements to the plaintiff class.

TND's argument has merit, particularly in light of the fact that the original complaint against Paradise was later amended to allege claims against an intermediary, Canafax, which Paradise apparently hired to do the facsimile transmitting for it. It is possible that in hiring Canafax, Paradise did not intend or expect its advertisements to be sent to unwilling recipients and that Canafax did so without Paradise's knowledge and/or consent. It is also possible that Paradise provided Canafax with the list of class members' facsimile numbers and that Paradise thereby did intend or expect to harm them. Without knowing the details of the relationship between Canafax and Paradise, neither this court, nor Brethren, can say for sure that Paradise was being accused in the complaints

---

32. The TCPA provides that "It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless—

"(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

"(ii) the sender obtained the number of the telephone facsimile machine through—

"(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

"(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution." 47 U.S.C. §227(1)(C).

of intentionally transmitting its advertisements to the class.[33] Therefore, Brethren had a duty to defend Paradise, at least until such time as it became clear that the class's claim was that Paradise intended to cause property damage to the class.

## CONCLUSION

For all the foregoing reasons, Paradise's motion for judgment on the pleadings is granted in part and denied

---

33. See *Park Univ. Enters. v. Am. Cas. Co.,* 442 F.3d 1239, 1245 (10th Cir. 2006) ("[T]here was a possible occurrence under the policy because the alleged property damage may have been an accident and not the natural and probable consequence of Park University's intentional fax transmission"); *Prime TV LLC v. Travelers Ins. Co.,* 223 F. Supp. 2d 744, 752 (M.D.N.C. 2002) ("Although the fax companies intentionally sent the facsimiles to the recipients, as ordered by [the insured], [the insured] believed that the recipients requested the information regarding [the insured's] services. Therefore, although [the insured] intentionally requested the advertisements to be faxed, such a request is not an intentional act made with the intent to cause property damage. Thus, the 'property damage' was the result of an 'occurrence' as defined by the policies and [the insurers] have a duty to defend [the insured] in the underlying state actions"). But see *Melrose Hotel,* 432 F. Supp.2d at 510 ("Because of the absence of: (1) any distinct allegations that [the insured] acted negligently; (2) any evidence that the faxes were accidentally sent to those who did not wish to receive them; or (3) any evidence that [the insured] believed that the faxes would go only to those who had authorized their receipt, the court concludes that sending the faxes cannot be deemed an 'event' under the policy"). This court disagrees with the *Melrose Hotel* court's holding. While the failure to produce such evidence may justify a finding that there was ultimately no duty of the insurer to indemnify the insured, such evidence is rarely available at the time that the initial decision to defend a TCPA claim is made. Since the TCPA claims in this case do not, and need not, specify whether the insured acted intentionally or accidentally, the insurer must defend until the matter of intent is resolved.

in part, and Brethren's motion for judgment on the pleadings is denied.

### ORDER

And now, May 10, 2007, upon consideration of plaintiffs' motion for judgment on the pleadings, defendant's motion for judgment on the pleadings, the responses thereto, and all other matters of record, and in accordance with the opinion issued simultaneously, it is hereby ordered that plaintiffs' motion is granted in part. Defendant had a duty to defend Paradise Distributing Inc. in the underlying class action until such time, if ever, that the class's claims were limited to a claim that Paradise intended or expected that its facsimile advertisements would be transmitted to the plaintiff class. The defendant's motion and the remainder of plaintiffs' motion are denied.