# Illinois Official Reports

## Appellate Court

***G.M. Sign, Inc. v. Pennswood Partners, Inc.*, 2014 IL App (2d) 121276**

| | |
|---|---|
| Appellate Court Caption | G.M. SIGN, INC., Plaintiff and Defendant and Counterplaintiff-Appellee, v. PENNSWOOD PARTNERS, INC., Defendant-Appellee and Cross-Appellant (Maryland Casualty Company and Assurance Company of America, Plaintiffs and Counterdefendants-Appellants and Cross-Appellees). |
| District & No. | Second District<br>Docket No. 2-12-1276 |
| Filed | March 24, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action seeking a declaratory judgment that defendant's insurers had no duty to provide coverage for defendant in an underlying suit alleging that defendant violated the Telephone Consumer Protection Act by sending unsolicited faxes, the entry of summary judgment for defendant was reversed on the ground that under the applicable Pennsylvania law, the underlying complaint did not allege an "accident" that was covered by defendant's policies, and pursuant to Supreme Court Rule 366(a)(5), the appellate court entered summary judgment for defendant's insurers, the claim against one insurer for statutory bad faith under Pennsylvania law was dismissed, and the denial of the defendant's request for accrued postsettlement interest was affirmed. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, Nos. 07-CH-757, 08-MR-153; the Hon. Margaret J. Mullen, Judge, presiding. |
| Judgment | Reversed in part and affirmed in part; judgment entered. |

Counsel on
Appeal

Michael M. Marick, Karen M. Dixon, and Timothy H. Wright, all of Meckler Bulger Tilson Marick & Pearson LLP, of Chicago, for appellants.

Brian J. Wanca and David M. Oppenheim, both of Anderson & Wanca, of Rolling Meadows, and Phillip A. Bock and Robert M. Hatch, both of Bock & Hatch, LLC, of Chicago, for appellees.

Michael C. Borders and Rosa M. Tumialan, both of Dykema Gossett PLLC, of Chicago, for *amici curiae*.

Panel

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    G.M. Sign filed a class action complaint against Pennswood Partners (Pennswood), for sending it unsolicited faxes. Maryland Casualty Company (Maryland Casualty) and Assurance Company of America (Assurance) then filed a declaratory judgment action against Pennswood and G.M. Sign, seeking a declaration that their insurance policies did not provide coverage to Pennswood in the underlying lawsuit for the unsolicited faxes. Maryland Casualty and Assurance (collectively, Zurich) are underwriting insurance companies that issued insurance policies to Pennswood. Zurich filed a motion for summary judgment, arguing that there was no coverage under Pennsylvania law as predicted by federal courts in Pennsylvania. Pennswood and G.M. Sign argued that Illinois law applied and that under Illinois law there was coverage. The trial court initially granted summary judgment in favor of Zurich and against Pennswood and G.M. Sign. However, upon Pennswood and G.M. Sign's motion to reconsider, the trial court withdrew its order and ultimately determined that the federal decisions did not establish a conflict between Pennsylvania law and Illinois law; therefore, Illinois law applied; and, under Illinois law, Zurich had a duty to defend Pennswood. Thus, the trial court granted summary judgment in favor of Pennswood and G.M. Sign. The trial court subsequently denied Pennswood and G.M. Sign's request for accrued postsettlement interest.

¶ 2    Zurich appeals the trial court's summary judgment in favor of Pennswood and G.M. Sign and against Zurich, arguing: (1) Illinois courts are vested with the discretion to consider federal courts' predictions in their conflict-of-laws analysis; (2) in an insurance coverage case, a single state's law should be applied to the interpretation of an insurance policy; and

(3) Zurich had no duty to defend or indemnify Pennswood in the underlying action under Pennsylvania law.[1]

¶ 3      Pennswood and G.M. Sign appeal the trial court's denial of their request for accrued postsettlement interest. We reverse in part and affirm in part.

¶ 4                              I. BACKGROUND

¶ 5      Pennswood, a Pennsylvania corporation with its principal and only place of business located in Wyomissing, Pennsylvania, provided executive placement services. Maryland Casualty is a Maryland corporation engaged in the insurance business, with its principal place of business in Illinois. Assurance is a New York corporation engaged in the insurance business, with its principal place of business also in Illinois. G.M. Sign is an Illinois corporation with its principal place of business located in Round Lake, Illinois.

¶ 6      On March 20, 2007, G.M. Sign filed a class action complaint[2] against Pennswood, alleging the following. Pennswood "transmitted by telephone facsimile machine unsolicited advertisements to [G.M. Sign's] facsimile machine." Pennswood "sent thousands of similar unsolicited facsimile advertisements to at least 39 other recipients." Pennswood "knew or should have known that" it did not have the recipients' permission or invitation to send them advertising. The complaint alleged that on two occasions in 2006 Pennswood faxed unsolicited advertisements to G.M. Sign. The three-count complaint alleged the following: (1) Pennswood violated the Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. § 227 (2006)), "by transmitting [the advertisements] to [G.M. Sign] and the other members of the class" and that Pennswood's "actions caused damages to [G.M. Sign] and the other class members, because their receipt of [Pennswood's] unsolicited fax advertisements caused them to lose paper and toner consumed as a result" and "cost [them] employee time"; (2) Pennswood was liable for common-law conversion of the plaintiffs' "fax machine toner, paper, memory, and employee time"; and (3) Pennswood violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2006)). The complaint alleged that a class action was proper in that "the class consists of forty or more persons in Illinois and throughout the United States and is so numerous that joinder of all members is impracticable." The complaint alleged that members of the class received faxed unsolicited advertisements from Pennswood within three, four, and five years from the filing of the complaint. The complaint sought damages, an injunction, attorney fees, and the certification of the class.

¶ 7      On May 22, 2007, Pennswood tendered its defense to Zurich. In a letter dated July 23, 2007, Zurich denied Pennswood's tender of defense, disclaiming any obligation to defend or indemnify in the underlying class action.

¶ 8      On July 31, 2007, the parties to the underlying class action filed a motion in the trial court for approval of terms of a settlement agreement signed by the parties on July 27 and July 30, 2007. The settlement agreement provided that Pennswood agreed to allow entry of a

---

[1]We granted leave to Property Casualty Insurers Association of America and National Association of Mutual Insurance Companies to file a joint brief as *amici curiae* in support of reversing the trial court's summary judgment.

[2]Case No. 07-CH-757.

judgment against it in the amount of $8 million that would be enforceable only "against the proceeds of" the Zurich policies. In addition, Pennswood agreed to assign to the class its rights under the Zurich policies.

¶ 9    On October 30, 2007, following a fairness hearing, the trial court in the underlying class action granted Pennswood and G.M. Sign's motion for approval of the settlement agreement and entered judgment in favor of the class and against Pennswood in the amount of $8 million, "to be satisfied only from the proceeds of [Pennswood's four Zurich] insurance policies." The trial court also ordered G.M. Sign's attorney to receive 33.33% of any recovery from Zurich, in accordance with the agreement. The trial court found the provisions of the agreement to be fair and reasonable. The trial court found that Pennswood faxed in excess of 80,000 unsolicited advertisements to the class between March 20, 2003, and December 1, 2003; faxed in excess of 160,000 unsolicited advertisements to the class between December 1, 2003, and December 1, 2004; faxed in excess of 160,000 unsolicited advertisements to the class between December 1, 2004, and December 1, 2005; and faxed in excess of 160,000 unsolicited advertisements to the class between December 1, 2005, and December 1, 2006. The trial court ordered that postsettlement interest would accrue from the date of the entry of the order. The trial court stated that its order was a "final and appealable order."

¶ 10    Zurich issued four commercial general liability policies to Pennswood (the Zurich policies) that were in effect during the relevant time period of the allegations contained in G.M. Sign's class action complaint. The policies were negotiated, delivered, and received in Pennsylvania. The premiums for the policies were paid by Pennswood from Pennsylvania.

¶ 11    Under "Coverage A," the Zurich policies provide coverage for "bodily injury" and "property damage" caused by an "occurrence." The policies define "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policies define "property damage" as:

"a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the 'occurrence' that caused it[.]"

The policies contain the following exclusion:

"Expected Or Intended Injury:

'Bodily Injury' or 'property damage' expected or intended from the standpoint of the insured."

Under "Coverage B," the policies provide coverage for "personal and advertising injury" liability.

¶ 12    The policy in effect December 1, 2005, through December 1, 2006, also incorporates an endorsement applicable to "Coverage A," entitled "Violation Of Communication Or Law Exclusion," that provides:

"This insurance does not apply to:

Violation of Communication or Information of Law

'Bodily injury,' 'property damage' or 'personal and advertising injury' resulting from or arising out of any actual or alleged violation of:

- 4 -

A. The Federal Telephone Consumer Protection Act (47 U.S.C. § 227), * * *

B. Any other federal, state or local statute, regulation or ordinance that imposes liability for the:

(1) Unlawful use of telephone, electronic mail, internet, computer, facsimile machine or other communication or transmission device; or

(2) Unlawful use, collection, dissemination, disclosure or reclosure of personal information in any manner by any insured or on behalf of any insured."

Each Zurich policy at issue includes the following endorsement:

"EXCLUSION–PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

COVERAGE B (Section I) does not apply and none of the references to it in the Coverage Part apply."

Each Zurich policy at issue contains the following condition:

"2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

* * *

c. You and any other involved insured must:

* * *

(3) Cooperate with us in the investigation or settlement of the claim or defense against the 'suit'; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense other than first aid, without our consent."

¶ 13    On February 1, 2008, Zurich filed a three-count declaratory judgment action against Pennswood and G.M. Sign.[3] Zurich sought declarations that its policies provided no coverage: (1) because the underlying action did not involve "property damage" caused by an "accident," and because coverage was precluded by the "expected or intended" injury exclusion; (2) because "Coverage B" (covering "personal and advertising injury") was not purchased and is excluded by the policies; and (3) due to Pennswood's breach of contract. The class action suit and the declaratory judgment suit were consolidated by the trial court.

¶ 14    On November 13, 2008, G.M. Sign filed a counterclaim for declaratory relief. Subsequently, G.M. Sign filed an amended counterclaim, asserting an additional claim for statutory bad faith under Pennsylvania law. On May 6, 2011, the parties filed cross-motions for summary judgment only on the coverage issues. Pursuant to the trial court's order, the cross-motions were not to address G.M. Sign's bad-faith claim. Zurich moved for summary judgment on all counts of its declaratory judgment complaint. Pennswood and G.M. Sign moved for summary judgment on "all claims other than the bad faith claim reserved for future proceedings by Court order" and for judgment in their favor on the reasonableness of

_____

[3]Case No. 08-MR-153.

the settlement, on Zurich's duty to defend and indemnify, and in the amount of the settlement, plus accrued postsettlement interest.

¶ 15        After argument by counsel, the trial court issued a well-reasoned written order on September 9, 2011, granting Zurich's motion. The trial court concluded that Illinois and Pennsylvania law were not in conflict on the issue of whether Coverage B was excluded from the policies; thus, the trial court applied Illinois law and determined that Coverage B was unambiguously excluded. The trial court then addressed whether "fax-blasting constitutes 'property damage' caused by an 'occurrence' within the meaning of the Policies." The trial court addressed whether there was a conflict between Illinois and Pennsylvania law regarding this issue. The trial court considered Illinois appellate court decisions and, because there were no Pennsylvania supreme court or appellate court decisions regarding the issue, the trial court considered decisions from federal courts in Pennsylvania. The trial court concluded, "[i]t appears that Illinois' rule allows broader coverage [than] Pennsylvania precedent, at least as analyzed by federal magistrate, district, and appellate judges, assumed to know the law in Pennsylvania." The trial court concluded that a conflict existed, and it applied the choice-of-law analysis set forth in *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 526-27 (1995). After considering the five factors enunciated in *Lapham-Hickey*, the trial court concluded that Pennsylvania law applied in interpreting the policy provisions, because it has the most significant contacts in this case. Pennsylvania's law does not recognize "fax blasts as covered under that provision." The trial court stated that it was unnecessary to determine the remaining issues and granted summary judgment in favor of Zurich and against Pennswood and G.M. Sign on counts I, II, and III of Zurich's complaint for declaratory judgment and count I of G.M. Sign's counterclaim.

¶ 16        Three weeks after the trial court's September 9, 2011, order, the appellate court decided *Pekin Insurance Co. v. XData Solutions, Inc.*, 2011 IL App (1st) 102769, ¶ 23 (holding that to determine the law of a sister state for the purpose of determining whether a conflict exists, a court could not consider federal court decisions because such decisions "only attempt to 'predict' [the state's] law"). Based on *XData*, Pennswood and G.M. Sign filed a motion to reconsider the trial court's September 9, 2011, order. The trial court granted the motion.

¶ 17        On October 12, 2012, after withdrawing its prior summary judgment, the trial court issued an order granting summary judgment in favor of Pennswood and G.M. Sign and against Zurich. Once again, the trial court concluded that Illinois and Pennsylvania law were not in conflict on the issue of whether Coverage B was excluded from the policies; therefore, the trial court applied Illinois law and determined that Coverage B was unambiguously excluded. However, the trial court changed its previous analysis regarding whether there was a conflict between Illinois and Pennsylvania law as to whether "fax-blasting constituted 'property damage' caused by an 'occurrence' within the meaning of the Policies." Compelled by the recent decision, *XData*, the trial court stated that "[i]n order to determine if a conflict exists, this court may not consider the federal court rulings and predict Pennsylvania law." The trial court, thus, concluded that there was no conflict between Illinois and Pennsylvania law and that, therefore, Illinois law applied. Under Illinois law, "fax blasting claims such as those alleged here trigger the duty to defend under the property damage clause." Regarding the expected/intended exclusion, the trial court determined that there was no difference between Illinois and Pennsylvania law and that the exclusion did not bar coverage. The trial court also determined that the law of Pennsylvania and Illinois differs on the issue of

estoppel against insurers that breach the duty to defend, but that the difference was immaterial here because the "underlying case was settled before trial [and, thus,] it is impossible to determine if the insured would have been liable for covered or uncovered counts." Regarding whether TCPA damages are insurable as a matter of public policy, the trial court determined that the states' law differs and that Pennsylvania law applied. The trial court also determined that Pennsylvania law applied to the issue of which damages are recoverable for Zurich's alleged bad faith. The trial court granted summary judgment in favor of Pennswood and G.M. Sign and against Zurich on counts I, II, and III of Zurich's complaint and count I of G.M. Sign's counterclaim, declaring that (1) Zurich had a duty to defend Pennswood under the policies for the underlying suit; (2) Zurich breached that duty to defend; (3) Zurich owed a duty of indemnity for the settlement resulting from the underlying suit; and (4) the settlement was reasonable. The trial court also entered judgment in favor of G.M. Sign and the class.

¶ 18    On October 31, 2012, Zurich filed a motion for a finding under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that there was no just reason to delay the enforcement of, or appeal from, the judgment entered by the trial court on October 12, 2012.

¶ 19    On November 5, 2012, Pennswood and G.M. Sign filed a "Memorandum in Support of" accrued postsettlement interest. On November 9, 2012, the trial court entered judgment in favor of G.M. Sign in the amount of $8 million, denied Pennswood and G.M. Sign's request for accrued postsettlement interest, and granted Zurich's Rule 304(a) motion.

¶ 20    Zurich filed its notice of appeal on November 9, 2012. On November 13, Pennswood and G.M. Sign filed their notice of cross-appeal from the portion of the trial court's November 9 order denying their request for accrued postsettlement interest.

¶ 21                                    II. ANALYSIS

¶ 22    Zurich urges this court to reverse the trial court's summary judgment in favor of Pennswood and G.M. Sign and against Zurich.

¶ 23    Summary judgment is appropriate only where the pleadings, depositions, admissions, and affidavits, viewed in the light most favorable to the nonmovant, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). "By filing cross-motions for summary judgment, the parties agree that no factual issues exist and this case turns solely on legal issues subject to *de novo* review." *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 73.

¶ 24    Furthermore, the "purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the hearing, changes in the law or errors in the court's previous application of existing law." *Pence v. Northeast Illinois Regional Commuter R.R. Corp.*, 398 Ill. App. 3d 13, 16 (2010). "A ruling on a motion to reconsider is typically reviewed for an abuse of discretion, but a motion to reconsider a grant of summary judgment typically questions the trial court's application of existing law," and the grant or denial of such a motion is reviewed *de novo*. See *Wilfong v. L.J. Dodd Construction*, 401 Ill. App. 3d 1044, 1063 (2010).

¶ 25    In general, when a court must resolve a case in which multiple jurisdictions have an interest, the court applies the choice-of-law rules of its own state to determine which state's

law will apply. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007). To determine which jurisdiction's law applies, a court must first isolate the issue, define the conflict, and determine whether the law of the interested jurisdictions conflicts. See *id.* at 155-56. A choice-of-law determination is required only when a difference in law will make a difference in the outcome. *Id.* at 155. The party seeking the choice-of-law determination bears the burden of demonstrating that a conflict exists. Because Zurich seeks a choice-of-law declaration, it bears the burden of demonstrating that a conflict exists. See *Chicago Board Options Exchange, Inc. v. International Securities Exchange, L.L.C.*, 2012 IL App (1st) 102228, ¶ 44. We review *de novo* a trial court's decision on a choice-of-law issue. *Townsend*, 227 Ill. 2d at 153-54.

¶ 26 In many respects, courts in Pennsylvania and Illinois interpret insurance policies and determine insurers' duties in a similar manner. In both states, courts interpret insurance policies to give effect to the intention of the parties, as that intention is expressed by the language of the policies when given its plain and ordinary meaning. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362-63 (2006); *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co.*, 908 A.2d 888, 897 (Pa. 2006). Similarly, in both states, an insurer has a duty to defend if the underlying complaint alleges facts within, or potentially within, the policy's coverage provisions. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991); *Gedeon v. State Farm Mutual Automobile Insurance Co.*, 188 A.2d 320, 321-22 (Pa. 1963).

¶ 27 The parties disagree as to whether there is a conflict between the states regarding whether a duty to defend was triggered in this case. Zurich argues that there is a conflict between the states regarding whether the unsolicited-faxes claims contained in the underlying complaint are covered under the policies' "property damage" provision. Zurich recognizes that, pursuant to Illinois law, it owed a duty to defend Pennswood. See *Insurance Corp. of Hanover v. Shelborne Associates*, 389 Ill. App. 3d 795, 803 (2009) (holding that, under Illinois law, the duty to defend was triggered under the property damage provision of the insured's policy where claim alleged violations of the TCPA); see also *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 364-65 (2006) (Illinois recognizes a duty to defend a class action complaint asserting violations of the TCPA). However, Zurich argues that, under Pennsylvania law, it did not owe a duty to defend, because the complaint did not allege "property damage" caused by an "occurrence" as defined in the policies. Zurich contends that under Pennsylvania law an "occurrence," as defined in the policies as an "accident," does not apply to intentional acts such as sending faxes.

¶ 28 The parties agree that no published decision of the Pennsylvania supreme or appellate courts has addressed the precise issue of whether a commercial liability policy covers claims for violations of the TCPA as property damage. However, Zurich cites to decisions of federal courts sitting in diversity in Pennsylvania in support of its position. Zurich argues that the trial court erred by following *XData*, 2011 IL App (1st) 102769, and, thereby, failing to consider those federal decisions to determine whether a conflict of law existed.

¶ 29 Pennswood and G.M. Sign argue that there is no conflict between the two states. They argue that the trial court properly disregarded the federal court decisions, pursuant to *XData*, and that, therefore, the trial court properly applied Illinois law. Pennswood and G.M. Sign

argue that the trial court properly determined that Zurich had a duty to defend and properly granted summary judgment in their favor.

¶ 30    In *XData*, 2011 IL App (1st) 102769, Targin, an Illinois corporation, filed a class action lawsuit against XData, an Indiana corporation, for faxing unsolicited ads to Targin in violation of the TCPA. *Id*. ¶ 3. Targin also sued for conversion of its paper and toner used in the fax machine. *Id*. ¶ 4. XData tendered defense of the lawsuit to its insurer, Pekin, which promptly filed a complaint seeking a judgment declaring that, under Indiana law, it had no duty to defend XData. *Id*. ¶ 5. The parties agreed that no published decision of the Indiana state courts had addressed the issue of whether a commercial liability policy covered claims for violations of the TCPA as either advertising injury or property damage. *Id*. ¶¶ 11, 25. Pekin relied on two decisions of federal courts sitting in Indiana. *Id*. ¶ 23.

¶ 31    The *XData* court held:

> "[W]e agree with the circuit court that there is no Indiana state law on the issue before us, so there can be no conflict with Illinois law. The two federal cases upon which Pekin relies merely acknowledge that they can only attempt to 'predict' Indiana law because there has been no state court decision on the issue. [Citation.] Accordingly, we cannot conclude that the federal cases represent Indiana state law for the purposes of engaging in a choice of law analysis. Therefore, since there is no Indiana state law on the issue of whether there can be coverage for a TCPA claim under an 'advertising injury' provision in an insurance policy, there can be no conflict with Illinois law, and Illinois law applies here." *Id.* ¶ 23.

¶ 32    Subsequent to the trial court's final summary judgment, a different division of the Illinois Appellate Court, First District, decided *Bridgeview Health Care Center, Ltd. v. State Farm Fire & Casualty Co.*, 2013 IL App (1st) 121920, *appeal allowed*, No. 116389 (Ill. Sept. 25, 2013), and declined to follow *XData*. Bridgeview filed a lawsuit against Jerry Clark, an Indiana resident, for faxing unsolicited ads to Bridgeview's Chicago office in violation of the TCPA. *Id*. ¶ 5. Bridgeview also charged Clark with conversion of its paper and toner used in the fax machine and with violating the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2006)). *Bridgeview*, 2013 IL App (1st) 121920, ¶ 5. Clark tendered defense of the lawsuit to its insurer, State Farm, which accepted the defense subject to a reservation of the right to deny coverage. *Id*. ¶ 6. Bridgeview filed a complaint against Clark and State Farm, seeking a judgment declaring that they had a duty to defend and indemnify Clark because the unsolicited faxes constituted property damage and advertising injury under the terms of the policy. *Id.* ¶ 7. State Farm filed a counterclaim, seeking a declaration that it had no duty to defend or indemnify. *Id*. On cross-motions for summary judgment, State Farm argued that Indiana law should apply because it had the most significant contacts. *Id*. ¶ 9. Bridgeview argued that Illinois law should apply because it had the most significant contacts and that there was no difference between the two states regarding whether State Farm had a duty to defend or indemnify. *Id*. The trial court, following the reasoning in *XData*, determined that State Farm had not shown that Indiana law conflicted with Illinois law. *Id.* ¶ 13. Thus, the trial court held that State Farm had a duty to defend and indemnify Clark because the unsolicited faxes constituted accidental property damage, and it granted summary judgment in favor of Bridgeview. *Id*.

¶ 33    On appeal, the appellate court held that the trial court erred by following the reasoning of *XData*. *Id.* ¶ 22. The appellate court reasoned that, when the law of another interested state is

uncertain, the court must undertake a choice-of-law analysis to determine which jurisdiction's law applies. *Id.* ¶ 19. It then stated:

> "Because no published decision of any Indiana state court has addressed the determinative issues in this case, the trial court should use decisions from the federal courts and the courts of other states, as well as law reviews, treatises, and other sources, in an attempt to predict how the Indiana courts would decide the determinative issues here." *Id.* ¶ 22.

We agree with the *Bridgeview* court.

¶ 34    On the question of whether we may consider federal decisions to determine whether a conflict exists, we decline to follow *XData* insofar as that court refused to acknowledge the federal decisions interpreting Indiana law as persuasive authority. See *XData*, 2011 IL App (1st) 102769, ¶ 23. The *XData* court's refusal to consider the federal decisions was in contravention of United States Supreme Court authority. See *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). In *Shutts*, to determine whether Texas law conflicted with Kansas law, the Supreme Court considered the decision of a federal district court applying Texas law and concluded that there was a conflict. *Id.* at 817-18.

¶ 35    Further, to determine whether a conflict of law exists regarding the interpretation of insurance policy terms, courts consider how state courts have interpreted and applied policy terms to different factual contexts. See *Universal Underwriters Insurance Co. v. LKQ Smart Parts, Inc.*, 2011 IL App (1st) 101723, ¶ 51 (holding that Wisconsin law would interpret "physical damage or loss" to include a spoliation-of-evidence claim, based on a Wisconsin court's decision that the term applied to a breach-of-contract claim). Accordingly, we will determine how Pennsylvania courts have interpreted the provision at issue as applied to similar factual allegations.

¶ 36    In this case, the Zurich policies provide liability coverage for "property damage" caused by an "occurrence," and the policies define "occurrence" as an "accident." Pennsylvania courts have interpreted "property damage" provisions similar to the provisions contained in the Zurich policies. See *Kvaerner Metals*, 908 A.2d 888; see also *Erie Insurance Exchange v. Maier*, 963 A.2d 907 (Pa. Super. Ct. 2008).

¶ 37    The Pennsylvania Supreme Court cautioned against "being overly inclusive in defining an 'occurrence.' " *Erie Insurance Exchange*, 963 A.2d at 909 (citing *Kvaerner Metals*, 908 A.2d 888). Thus, the Pennsylvania Supreme Court defined "occurrence" as the policies in this case have, as an "accident," and it defined "accident" as "[a]n unexpected and undesirable event," or "something that occurs unexpectedly or unintentionally." (Internal quotation marks omitted.) *Kvaerner Metals*, 908 A.2d at 898. Therefore, intentional acts are not occurrences. *Erie Insurance Exchange*, 963 A.2d at 909. To determine whether an act is intentional, courts consider whether the insured "desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." *United Services Automobile Ass'n v. Elitzky*, 517 A.2d 982, 989 (Pa. Super. Ct. 1986). When an insured is alleged to have been negligent, the property damage or injury cannot be the result of an "accident" unless the damage or injury was unforeseeable, unexpected, or fortuitous. See *Donegal Mutual Insurance Co. v. Baumhammers*, 938 A.2d 286, 293 (Pa. 2007).

¶ 38    Regarding allegations of unsolicited faxes and TCPA violations, the United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania, applying Pennsylvania law, have held that an insurer did not have a duty to

- 10 -

defend class action fax-blasting claims in cases similar to the case before us. *Nationwide Mutual Insurance Co. v. David Randall Associates, Inc.*, No. 13-1515, 2014 WL 67888 (3d Cir. Jan. 9, 2014)[4]; *Melrose Hotel Co. v. St. Paul Fire & Marine Insurance Co.*, 432 F. Supp. 2d 488, 507-09 (E.D. Pa. 2006), *aff'd sub nom. Subclass 2 of the Master Class of Plaintiffs Defined & Certified in the January 30, 2006 & July 28, 2006 Orders of the Circuit Court of Cook County, Illinois in the Litigation Captioned Travel 100 Group, Inc. v. Melrose Hotel Co.*, 503 F.3d 339, 340 (3d Cir. 2007).

¶ 39    In *Melrose*, the insured (a hotel) hired a third party to send fax advertisements, and the recipients of the faxes filed a class action lawsuit against the insured, alleging violations of the TCPA, common-law conversion, and common-law trespass to chattels. *Id*. at 492-93. The underlying complaint alleged that the insured "[knew] or should have known that its appropriation of the paper and toner *** was wrongful and without authorization." (Internal quotation marks omitted.) *Id*. at 493. The insurer claimed that it had no duty to defend, because the policy provided coverage only for accidental property damage. *Id*. at 505. On cross-motions for summary judgment, the *Melrose* court, applying Pennsylvania law, held that the insurer had no duty to defend, because the complaint alleged that the insured's conduct was intentional and, therefore, not accidental. *Id*. at 504-05. The court was "not persuaded to the contrary simply because the [underlying] Complaint uses the phrase 'should have known.' " *Id*. at 509. The court reasoned that the underlying complaint failed to allege that the insured accidently sent the faxes to those who did not consent to receiving them and failed to allege specific acts of negligence that made possible the intentional acts of the third party. *Id*. The court stated that the insured "knew that its actions would cause the very harm that the TCPA aims to prevent." *Id*. at 510.

¶ 40    Similarly, in *David Randall Associates*, 2014 WL 67888, at *3, the United States Court of Appeals held that an insurer had no duty to defend or indemnify an insured against a class action complaint alleging that the insured and its director sent unsolicited faxes to the plaintiffs in violation of the TCPA. The policy provided coverage for "property damage," but only if such damage was caused by an "occurrence," which was defined as an "accident." *Id*. at *1. The underlying complaint alleged that the insured "knew or should have known" that the plaintiffs had not given their express permission for the insured and its director to fax advertisements to the plaintiffs. *Id*. Like the *Melrose* court, the Court of Appeals rejected the insured's argument that the "should have known" language was sufficient to allege negligence. *Id*. at *2 (citing *Melrose*, 432 F. Supp. 2d at 510). The court explained that the underlying complaint contained no factual allegations that the faxes were sent by accident, that the insured acted negligently, or that "it mistakenly believed the faxes were sent with the recipients' permission." *Id*. The court reasoned that, even if the insured had alleged negligence, the insured's conduct did not qualify as an accident, because the damage caused by the insured was reasonably foreseeable. *Id*. at *3. The court stated that, although the insured and its director "might not have intended to violate the TCPA, they intended to send the faxes and knew that sending them would result in the use of the recipients' paper, toner, and time." *Id*. Therefore, the court held that the insurer had no duty under the terms of the policy to defend or indemnify the insured. *Id*.

_____

[4]*David Randall Associates* was submitted to this court by Zurich as supplemental authority after oral argument; however, we were aware of the case prior to Zurich's submission.

¶ 41   We recognize that Pennsylvania courts are not bound by *David Randall*, *Melrose*, or any other decision of a federal court other than the United States Supreme Court. See *Cresci Construction Services, Inc. v. Martin*, 64 A.3d 254, 259 (Pa. Super. Ct. 2013). However, Pennsylvania courts may rely on *David Randall* and *Melrose* as well as other federal court decisions as persuasive authority. See *id*. Further, Illinois courts rely on federal court decisions to determine whether a conflict exists. See *Banks v. RIBCO, Inc.*, 403 Ill. App. 3d 646, 649 (2010) (relying on a federal decision interpreting an Iowa statute to determine whether a conflict of law exists); see also *Sears, Roebuck & Co. v. National Union*, 331 Ill. App. 3d 347, 352-53 (2002) (Illinois state courts have the discretion to rely on persuasive federal diversity decisions in predicting how a sister state's supreme court would rule on a matter at issue). In addition, the United States Supreme Court has relied on federal decisions to determine state law in conflict-of-law analyses. See, *e.g.*, *Shutts*, 472 U.S. at 817-18 (relying on a federal decision interpreting Texas law).

¶ 42   The complaint in this case did not allege an accident under Pennsylvania law. The complaint alleged that Pennswood "transmitted by telephone facsimile machine [thousands of unsolicited advertisements] to Plaintiff[s'] facsimile machine[s]." Further, the complaint alleged that Pennswood's action caused the plaintiffs to lose paper, toner, and use of their fax machines. Although the complaint also alleged that Pennswood "knew or should have known" that it did not have permission to send faxes to the plaintiffs, the complaint did not allege that Pennswood accidentally sent faxes to those who did not consent to receiving them. In addition, the complaint did not contain any specific factual allegations of Pennswood's negligence that caused Pennswood's intentional act of faxing unsolicited advertisements. Accordingly, we determine that, based on Pennsylvania's state courts' interpretations of "property damage" and "accident," and considering as persuasive the federal court decisions in *David Randall* and *Melrose*, the allegations in the complaint at issue would not be deemed to allege an "accident" under Pennsylvania law.

¶ 43   Pennswood and G.M. Sign cite *Telecommunications Network Design Inc. v. Brethren Mutual Insurance Co.*, 83 Pa. D. & C.4th 265 (2007), to support their argument that there is no conflict between Illinois and Pennsylvania law. In *Brethren*, the class filed suit against both the policyholder and a third-party vendor who sent the faxes. *Id*. at 271. The Pennsylvania Court of Common Pleas held that the insurer had a duty to defend under the "property damage" provision of its policy because the court could not determine the relationship between the insured and the third-party vendor; it was possible that the third-party vendor sent the faxes to unwilling recipients without the insured's knowledge. *Id*. at 276. In this case, the complaint did not allege a third-party vendor. Rather, it alleged that Pennswood sent the unsolicited faxes directly to the recipients. Further, nothing in the record indicates that Pennswood reasonably believed that it had the recipients' permission. To the contrary, the record indicates that Pennswood's owner's belief that the recipients would like to receive the faxes was based only on his belief in the value of Pennswood's products and not on any actual knowledge that he had the recipients' consent. Therefore, *Brethren* is distinguishable from this case.

¶ 44   Pennswood and G.M. Sign also argue that there is coverage under the policies' "property damage" provision because Pennswood did not intend to cause harm. Pennswood supports this argument with its owner's statements that he believed it had the recipients' consent and that it would not have sent the faxes if he had known that it did not have the recipients'

consent. This "accidental fax" argument was rejected by the court in *Melrose*, 432 F. Supp. 2d at 505 (citing *Resource Bankshares Corp. v. St. Paul Mercury Insurance Co.*, 407 F.3d 631, 638-39 (4th Cir. 2005)). Like the insured in *Melrose*, Pennswood did not investigate to determine whether the recipients had consented. *Id*. Further, nothing in the record supports a determination that Pennswood received express prior permission as required by the TCPA. 47 U.S.C. § 227(a)(4) (2006) (forbidding all unsolicited fax advertisements and defining unsolicited faxes as those transmitted "with[out] *** prior express invitation or permission").

¶ 45    In addition, Pennswood and G.M. Sign argue that there is no conflict between Illinois and Pennsylvania law regarding whether Zurich owed a duty to defend pursuant to the policies' "property damage" provisions. They cite *Elitzky*, 517 A.2d 982, to support their argument. In *Elitzky*, the Pennsylvania Superior Court stated that "[i]nsurance coverage is not excluded because the insured's actions are intentional unless he also intended the resultant damage." *Id*. at 987. The court held that the insurer had a duty to defend because the underlying plaintiff could recover on his libel claim even if the insureds thought that their statements were true and thus had no intent to injure the plaintiff. *Id*. at 989. In this case, the record reveals that Pennswood intended the resultant damage or harm because Pennswood's owner testified that he knew that the faxes would consume the recipients' paper and toner. Thus, *Elitzky* does not support Pennswood and G.M. Sign's position. Accordingly, a conflict exists between Illinois and Pennsylvania regarding whether Zurich owed Pennswood a duty to defend under the "property damage" provision of the policies.

¶ 46    Because we have determined that a conflict exists, we must undertake a choice-of-law analysis. See *Townsend*, 227 Ill. 2d at 155. Even if Pennsylvania law were uncertain, it would be prudent to consider that a conflict might exist between Pennsylvania and Illinois law and undertake a choice-of-law analysis. *Sterling Finance Management, L.P. v. UBS PaineWebber, Inc.*, 336 Ill. App. 3d 442, 451 (2002).

¶ 47    It is undisputed that the policies at issue in this case contain no choice-of-law provision; thus, we apply the general choice-of-law rules of the forum state, Illinois, to determine which state's law should apply. See *Emerson Electric Co. v. Aetna Casualty & Surety Co.*, 319 Ill. App. 3d 218, 232 (2001). If an insurance policy does not specify a choice of law, the determination is generally governed by the following factors: (1) the location of the subject matter; (2) the place of delivery of the insurance policy; (3) the domicile of the insured or of the insurer; (4) the place of the last act to give rise to a valid insurance policy; and (5) the place of performance, or other place bearing a rational relationship to the general insurance policy. *Lapham-Hickey*, 166 Ill. 2d at 526-27. These factors do not have equal significance and are to be weighed according to the issue involved. *Emerson Electric*, 319 Ill. App. 3d at 232. To assist in the application of the *Lapham-Hickey* analysis for the choice of law applicable to an insurance policy, consideration should be given to the justified expectations of the parties, to the predictability and uniformity of the result, and to the ease in the determination and application of the law to be applied. *Id*.

¶ 48    In this case, the location of the subject matter is the location of the risk insured by the Zurich policies. See *Emerson Electric*, 319 Ill. App. 3d at 232-33. Those risks are located at the various fax machines that gave rise to Pennswood's liability. As alleged in the class action complaint, these sites are nationwide. Because the Zurich policies provided coverage for sites located in more than one state, little weight is given the location of the subject matter. See Restatement (Second) of Conflict of Laws § 193 cmt. b, at 611-12 (1971) ("The

- 13 -

location of the insured risk [is] given greater weight than any other single contact *** provided that the risk can be located, at least principally, in a single state. Situations where this cannot be done, and where the location of the risk has less significance, include *** where the policy covers a group of risks that are scattered throughout two or more states."); see also *Emerson Electric*, 319 Ill. App. 3d at 232-33.

¶ 49    Regarding the second factor, the parties agree that the place of delivery of the insurance policies was Pennsylvania. Thus, this factor weighs in favor of Pennsylvania's interests.

¶ 50    Regarding the third factor, the domicile of the insured or of the insurer, the parties agree that the domicile of the insurers, Maryland Casualty and Assurance, is Illinois. However, in cases such as this one, where the risk is located in multiple states, courts focus on the domicile of the insured and where the negotiations, purchase, and issuance of the insurance policies took place. See, *e.g.*, *Emerson Electric*, 319 Ill. App. 3d at 235-36. In this case, Pennswood is domiciled in Pennsylvania. Pennsylvania is the place of its incorporation and its principal place of business. Apart from Pennswood's unsolicited faxing activities, it has no business operations outside of Pennsylvania. Pennswood's employees and facilities are all located in Pennsylvania. The Zurich policies were negotiated with, purchased by, and issued to Pennswood in Pennsylvania through an agent located in Pennsylvania. Thus, the third factor weighs heavily in favor of Pennsylvania's interests.

¶ 51    Regarding the fourth factor, the place of the last act giving rise to the policies is the state where the policies were delivered and where the premiums were paid. *Id.* at 233-35. The policies were delivered in Pennsylvania and Pennswood paid its premiums in Pennsylvania. Thus, this factor weighs in favor of Pennsylvania's interests.

¶ 52    The fifth factor, the place of performance, also weighs in favor of Pennsylvania because there is no express agreement determining the place of performance, and Pennswood's principal place of business is in Pennsylvania. See *id.* at 234 (where there was no express agreement as to the place of performance, and the intended place of the insurer's payment of claims could not be determined because they were scattered throughout several states, the court looked to the state where the insured was located).

¶ 53    As the trial court concluded in its well-reasoned choice-of-law analysis in its September 9, 2011, summary judgment, we conclude that the record points to Pennsylvania as the appropriate choice of law to govern the interpretation of the Zurich policies. Guided by Pennsylvania case law on the interpretation of "accident" and by federal law predicting Pennsylvania law regarding "property damage" insurance coverage for violations of the TCPA, we determine that, under Pennsylvania law, the underlying complaint did not allege an accident. Therefore, Zurich had no duty to defend under the policies' "property damage" provisions. Because Zurich had no duty to defend, it has no duty to indemnify. See *Kvaerner*, 908 A.2d at 896 n.7 (an insurer has a duty to indemnify only if it has a duty to defend). Further, because we have determined that Pennsylvania law and not Illinois law governs, we need not address Zurich's final argument, that there is no coverage because Illinois's public policy precludes coverage for fax-blasting lawsuits.

¶ 54    Thus, under our authority pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we grant summary judgment in favor of Zurich and against Pennswood and G.M. Sign and declare: (1) Zurich had no duty to defend Pennswood under the policies for the underlying complaint; (2) Zurich had no duty to defend and has no duty to indemnify Pennswood with respect to any liability, judgment, or settlement resulting from the

underlying complaint; and (3) Zurich did not breach any contractual obligations to Pennswood. In addition, we dismiss G.M. Sign's claim against Zurich alleging statutory bad faith under Pennsylvania law.

¶ 55 Addressing Pennswood and G.M. Sign's cross-appeal, because we have determined that Zurich has no duty to Pennswood regarding any liability, judgment, or settlement in the underlying lawsuit, we affirm the trial court's denial of Pennswood and G.M. Sign's request for accrued postsettlement interest. Further, we need not address Zurich's motion to strike a portion of Pennswood and G.M. Sign's cross-reply brief addressing the trial court's denial of their request for accrued postsettlement interest.

¶ 56 III. CONCLUSION

¶ 57 For the reasons stated, we reverse the trial court's summary judgment in favor of Pennswood and G.M. Sign. We enter summary judgment in favor of Zurich and against Pennswood and G.M. Sign. Further, we affirm the trial court's order denying Pennswood and G.M. Sign's request for accrued postsettlement interest and dismiss G.M. Sign's claim against Zurich alleging statutory bad faith under Pennsylvania law.

¶ 58 Reversed in part and affirmed in part; judgment entered.